98 P.3d 207

**STATE of Arizona, Appellee,**

v.

**Manuel Uriarte GARNICA, Appellant.**

**No. 1 CA–CR 02–0832.**

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 28, 2004.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Alan L. Amann, Assistant Attorney General Attorneys, Phoenix, for Appellee.

James J. Haas, Maricopa County Public Defender By Peg Green, Deputy Public Defender Attorneys, Phoenix, for Appellant.

## OPINION

BARKER, Judge.

¶ 1 In this Opinion, we address the question of whether a person can be an accomplice to an offense that is premised on a reckless mental state. The specific issue is whether one who must have "the *intent* to promote or facilitate the commission of an offense" in order to be an accomplice, Ariz. Rev.Stat. ("A.R.S.") § 13–301 (2001) (emphasis added), can do so when the offense requires only a mens rea of *recklessness*. We find that such criminal liability is both legally possible and factually supported here. We affirm.[1]

---

1. We also file concurrently a separate Memoran-

dum Decision, consistent with Rule 31.26 of the

## I.

¶ 2 Late one night in May of 2000, defendant Manuel Uriarte Garnica ("Manuel") and his brother, Jason Lucas Garnica, were drinking and partying with friends in a residential area in Guadalupe, Arizona. Another group of people, who had been drinking and partying at a different location in Guadalupe, drove into the area and exited their vehicles. The group of newcomers included, among others, Mike M., Monique M., Richard N., David L., and Cynthia A. Some of the people in the two groups began yelling at each other and trading insults. Some beer bottles were thrown with one of the bottles hitting Richard N. in the head and knocking him down. Mike M. began swinging a stick that resembled a nunchaku [2] to protect Richard N. from further harm, and in doing so, hit Jason Garnica.

¶ 3 About that time, shots rang out. Realizing that bullets were flying around them, the group of newcomers got back into their vehicles and drove away but not before a bullet hit Richard N. in the leg. As more shots were fired toward the fleeing vehicles, one bullet hit the gas tank of the Dodge Neon in which Monique M., David L., and Cynthia A. were riding. Other bullets may have hit the Yukon carrying Mike M. and Richard N. Another bullet lodged itself in the hood of a Chevrolet Cavalier that happened to be passing through the area at the time of the shooting, with three neighborhood residents inside. Tragically, one of the bullets struck and killed an eighteen-year-old neighborhood resident ("the victim"), just as the victim's father was approaching to talk to him.

¶ 4 Police officers who arrived at the scene found seven bullet casings in the dirt area next to the house where the neighborhood group had congregated and eight additional casings in the street in front of the house. An analysis of the bullet recovered from the victim's body, along with the shell casings, bullets, and bullet fragments recovered from the scene and the various vehicles, indicated the likelihood that all of the shots had been fired from the same gun.

¶ 5 Witnesses reluctantly divulged to the police that the two Garnica brothers had been shooting a gun from the locations where the shells were found, but their testimony was less than clear as to which of the shots had been fired by which brother. In Manuel's first videotaped interview with police, he denied that he had even been at the scene. In a second videotaped interview, after the other witnesses had provided their statements to the police, Manuel confessed that he had been there and was the person who had brought the gun, but he denied doing any shooting. He claimed, instead, that Jason had asked him for the gun and had fired all the shots. Manuel further claimed he did not shoot the gun; rather he had stayed by Jason's side as Jason shot, giving Jason ammunition when Jason asked for it. In a separate interview, Jason confessed that he had fired a number of the shots, including those directed at the vehicles as they drove away, but he claimed that Manuel had fired the first few shots before handing him the gun.

¶ 6 Manuel and Jason were indicted on a number of charges arising out of the shooting incident. Manuel, alone, was charged with the second degree murder of the victim and aggravated assault against Richard N. and the victim's father. Both Manuel and Jason were charged with aggravated assault against Monique M., David L., and Cynthia A. Both brothers were also charged with endangerment as to the three neighborhood residents in the Chevy Cavalier.

¶ 7 Subsequently, Jason pled guilty to one of the aggravated assault charges in return for dismissal of all the other charges against him and received a ten-year sentence. Manuel pled not guilty and went to trial on all nine of the charges.

¶ 8 When called at trial, the witnesses who had implicated Jason and Manuel denied any

Arizona Rules of Criminal Procedure (providing for a separate memorandum decision on issues not intended for publication).

2. A "nunchaku" is "a weapon that consists of two hardwood sticks joined at their ends by a short length of rawhide, cord, or chain." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 797 (10th ed.2001).

memory of what had happened, but the state was able to present evidence of the statements the witnesses had previously made to the police. Manuel chose not to testify. Portions of his taped interviews with the police were shown to the jury. Manuel's primary theory in defense was that he had not been the shooter, and particularly not the shooter of the bullet that hit the victim. Secondarily, he claimed self-defense, arguing that irrespective of whether it was he or Jason who fired any of the shots giving rise to the charges, he and Jason were being shot at and were justified in firing back. He requested and received jury instructions on the justification defenses of self-defense and defense of third persons.

¶ 9 At the close of evidence, the trial court granted judgment of acquittal on the assault charges involving David L. and Cynthia A.[3] The court sent all the other charges to the jury. The jury found Manuel guilty as charged on the seven remaining counts. The trial court sentenced Manuel to an aggravated term of twenty years for the second degree murder conviction, presumptive terms of 7.5 years on each of the three aggravated assault counts, and presumptive terms of 2.25 years on each of the three endangerment counts, with all sentences to be served concurrently. Manuel filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–120.21 (2003).

## II.

¶ 10 Manuel claims the trial court committed reversible error in giving the accomplice liability instruction to the jury on each of the offenses that could be established by means of a reckless mental state. Manuel argues that "the mental state required for recklessness precludes a finding that a person acted as an accomplice." We reject this argument. Our statutory scheme permits accomplice liability for one who intentionally promotes or facilitates the perpetrator's conduct in committing an offense, even though

the culpable mental state for the offense itself is recklessness.

¶ 11 Five of the seven counts against Manuel that went to the jury could be satisfied upon a showing of a reckless mental state: the three endangerment charges, A.R.S. § 13–1201(A) (2001) ("A person commits endangerment by *recklessly* endangering another person with a substantial risk of imminent death or physical injury.") (emphasis added); the second degree murder charge, A.R.S. § 13–1104(A)(3) (2001) ("Under circumstances manifesting extreme indifference to human life, such person *recklessly* engages in conduct which creates a grave risk of death and thereby causes the death of another person.") (emphasis added); and the aggravated assault involving physical injury to Richard N., A.R.S. § 13–1203(A)(1) (2001) ("A person commits assault by … [i]ntentionally, knowingly or *recklessly* causing any physical injury to another person.") (emphasis added). The two remaining counts of aggravated assault that went to the jury did not result in physical injury, and could be established only by showing that defendant "[*i*] *ntentionally* plac[ed] another person in reasonable apprehension of imminent physical injury." A.R.S. § 13–1203(A)(2) (2001) (emphasis added). Thus, these latter two counts are not at issue.

¶ 12 Manuel has two bases for his argument that accomplice liability cannot exist for reckless offenses. First, he relies upon the language of A.R.S. § 13–301. Second, he cites to *State v. Phillips*, 202 Ariz. 427, 46 P.3d 1048 (2002), in which our supreme court construed certain of the accomplice liability statutes, A.R.S. §§ 13–301 and –303(A)(3) (2001).

### A.

¶ 13 We address first the statutory argument that the language of the accomplice liability statute itself precludes accomplice liability for reckless offenses. That statute provides in pertinent part as follows:

---

3. The state had charged Manuel with aggravated assault against David L. and Cynthia A., claiming Manuel intentionally placed each of them "in reasonable apprehension of imminent physical injury." Neither of these witnesses testified, and the trial court agreed with defense counsel's contention that the evidence was insufficient to show such apprehension as to them.

"[A]ccomplice" means a person ... who with the intent to promote or facilitate the commission of an offense:

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense[;]

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13–301. The jury instructions included, verbatim, the above statutory language. The instructions also included the following:

A person is criminally accountable for the conduct of another if the person is an accomplice of such person in the commission of an offense.

This latter instruction is taken directly from A.R.S. § 13–303(A).

¶ 14 During jury deliberations, the jury asked the following questions: "On the aggravated assault charge does the defendant have to be the one shooting the gun. Does paragraph 3 on second degree murder apply with [sic] does he have to be the shooter." With the approval of both counsel, the trial court advised the jury in writing that "[a]s to either or both aggravated assault and/or second degree murder, the defendant does not have to be a principal (shooter) if you find beyond a reasonable doubt that he is an accomplice, as defined on page 30 of the instructions."

¶ 15 Because Manuel did not object to the accomplice liability instructions that were given (or the answer to the jury's question) and did not request any additional instruction, we review only for fundamental error. *State v. Bass*, 198 Ariz. 571, 575, ¶ 9, 12 P.3d 796, 800 (2000). "Error is fundamental when it reaches 'the foundation of the case or takes from the defendant a right essential to his defense,' or is an 'error of

such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.'" *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988) (quoting *State v. Thomas*, 130 Ariz. 432, 435–36, 636 P.2d 1214, 1217–18 (1981)).

¶ 16 There is no Arizona case law that addresses the issue of whether a defendant can be liable as an accomplice for a reckless offense. Other states, and commentators, have dealt with the issue. While there is not complete unanimity on the issue, there appears to be a majority rule allowing accomplice liability in such circumstances.[4] *See Ex Parte Simmons*, 649 So.2d 1282, 1284 (Ala. 1994) (distinguishing negligent homicide from reckless homicide and finding it "both logically and legally consistent to impose [accomplice] liability on one whose conduct aids or encourages another who is aware of, and who consciously disregards, a substantial risk of death"); *Riley v. State*, 60 P.3d 204, 214 (Alaska App.2002) ("[T]he language requiring an accomplice to act 'with the purpose of promoting or facilitating the commission of the offense' actually refers to the accomplice's 'conscious objective [of] bringing about ... conduct that the code has declared to be criminal.'") (quoting MODEL PENAL CODE § 2.06(3) cmt. at 310 (1985)) (second alteration in original); *Bogdanov v. People*, 941 P.2d 247, 251 (Colo.1997) ("The principle we enunciated in *Wheeler* is that when [an accomplice] intentionally assists or encourages another whom the [accomplice] knows will thereby engage in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another, such a mental state should suffice for complicity liability for an underlying crime defined by the culpable mental states of recklessness or negligence ...."), *disapproved on other grounds by Griego v. People*, 19 P.3d 1 (Colo.2001); *People v. Wheeler*, 772 P.2d 101, 103 (Colo.1989)

---

4. A reckless offense is one form of "unintentional" offenses. We do not address all "unintentional" offenses. There are other decisions dealing with criminally negligent offenses, not at issue here. In *State v. Locke*, 144 N.H. 348, 761 A.2d 376, 379 (1999), the New Hampshire court distinguished between negligent and reckless conduct and held that accomplice liability could

apply to reckless crimes but not negligent crimes. New Hampshire has an accomplice liability statute with provisions similar to Arizona's sections 13–301 and 13–303. *See id.* at 378–79. We do not determine here whether that court's conclusion as to negligent crimes is or is not correct. That issue is not before us.

("The 'intent to promote or facilitate the commission of the offense' of which the complicity statute speaks is the intent to promote or facilitate the act or conduct of the principal."); *People v. Cole*, 253 Ill.App.3d 603, 192 Ill.Dec. 661, 625 N.E.2d 816, 820–21 (1993) (finding reckless manslaughter can be based on principles of accomplice liability); *Mendez v. State*, 575 S.W.2d 36, 38 (Tex.Crim.App. 1979) (upholding a conviction based on accomplice liability when the defendant "intentionally solicit[ed] or assist[ed] an individual in committing a reckless act"); *see also* JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW § 30.05(B)(3) (2d ed.1995) (discussing liability for crimes of recklessness and negligence, and providing case citations for both the majority and minority rule).

¶ 17 Defendant has cited no cases or authorities to us supporting his view of the statute. There is, however, discussion in the literature with regard to a minority (or alternate) rule. *See* 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 6.7(e) at 149–51 (1986); Audrey Rogers, *Accomplice Liability for Unintentional Crimes: Remaining Within the Constraints of Intent*, 31 Loy. L.A. L.Rev. 1351, 1372–77 (1998). The only two reported decisions of which we are aware that endorse the principle that "intent to promote an offense" cannot be reconciled with a *reckless* offense are *Echols v. State*, 818 P.2d 691 (Alaska App. 1991), and *Simmons v. State*, 649 So.2d 1279, 1280 (Ala.Crim.App.1992) (accepting the argument that " 'intent' and 'recklessness' are incongruent concepts"). Those decisions have been overruled or reversed. *See Riley*, 60 P.3d 204; *Simmons*, 649 So.2d 1282.

¶ 18 We find Alaska's treatment of this issue, as qualified by our subsequent discussion of *Phillips, infra* ¶¶ 25–30, 46 P.3d 1048, to be a persuasive example of the majority rule. Initially, the Alaska Court of Appeals held in *Echols* that a person "cannot be convicted as an accomplice for acting recklessly." 818 P.2d at 695. Rather, the Alaska court held the state must show that the accomplice "intended that [the victim] suffer serious physical injury." *Id.* In *Echols*, the accomplice was a wife who solicited her husband to discipline their child. The husband then severely injured the child.

¶ 19 Approximately ten years later, the Alaska Court of Appeals reversed its decision in *Echols.* In *Riley,* the Alaska court stated:

> We were wrong when we said in *Echols* that liability for assault or criminal homicide under a complicity theory always requires proof that the defendant *intended* to cause the injury or the death, even though the underlying crime requires proof of only a lesser culpable mental state (extreme indifference to the value of human life, recklessness, or criminal negligence).

60 P.3d at 207 (emphasis added). In *Riley,* two defendants shot into a group of people. *Id.* at 205. The state was unable to prove which defendant shot which victim. *Id.* at 206. In construing a statute similar to ours,[5] the court held that "[w]hen a defendant solicits, encourages, or assists another to engage in conduct, *and does so with the intent to promote or facilitate that conduct,* a defendant becomes accountable under [the Alaska statute] for that conduct." *Id.* at 207 (emphasis added).

¶ 20 The Alaska statute is similar to A.R.S. § 13–301.[6] The Alaska court held that "[i]f that conduct leads to unintended injury or death, the defendant can be convicted of assault or criminal homicide if the government additionally proves that the defendant acted with the culpable mental state required for the charged crime." *Riley*, 60 P.3d at 207. As part of its rationale, the Alaska court noted the incongruity that "the principal might be convicted on proof that he or she acted 'recklessly' or with 'criminal negligence' with respect to the prohibited result, [but] the accomplice could not be convicted

---

5. Alaska Stat. § 11–16–110 (1978).

6. The Alaska statute provides as follows: "A person is legally accountable for the conduct of another constituting an offense if … with intent to promote or facilitate the commission of the offense, the person (A) solicits the other to commit the offense; or (B) aids or abets the other in planning or committing the offense…." Alaska Stat. § 11.16.110(2) (Michie 2002). Alaska does not have an equivalent statute to A.R.S. § 13–303(B).

unless the State proved that the accomplice acted 'intentionally' with respect to that result." *Id.* at 208. The court further pointed out that this incongruity would result in having to prove both a principal and accomplice guilty under the higher standard of "intentional" conduct even though an assault could be committed recklessly by the terms of the statute itself. *Id.* at 209. The rule described in *Riley* represents the majority view. We agree with it.

¶ 21 We likewise agree with the Alaska court's rejection of the alternate view that an accomplice liability statute, such as Alaska's § 11.16.110 and Arizona's § 13–301, runs counter to the Model Penal Code. *See id.* at 212–21. That argument is that the statutes at issue are based on the Model Penal Code [7] and the Model Penal Code does not support accomplice liability for reckless acts. *See id.* at 212–13. The commentary to the Model Penal Code, however, is to the contrary. It provides that the phrase "with the purpose of promoting or facilitating the commission of the offense" is intended to refer to the accomplice's "conscious objective [of] bringing about ... *conduct* that the Code has declared to be criminal." MODEL PENAL CODE § 2.06(3) cmt. at 310 (emphasis added). Section 2.06(4) of the Model Penal Code was intended to make clear that an accomplice must nonetheless meet the required mental state for the offense under the statute. MODEL PENAL CODE § 2.06(4) cmt. at 321.

¶ 22 Additionally, even if the alternate view were correct that accomplice liability for a reckless offense could only be premised on a statute modeled after Model Penal Code § 2.06(4), Arizona has such a statute. Arizona Revised Statutes § 13–303(B) expressly provides:

> If causing a particular result is an element of an offense, a person *who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense* is guilty of that offense if:
> 1. The person solicits or commands another person to engage in the conduct causing such result; or
> 2. The person aids, counsels, agrees to aid or attempts to aid another person in planning or engaging in the conduct causing such result.

(Emphasis added.) The requirement that an accomplice "act[ ] with the kind of culpability with respect to the result" reinforces the potential for accomplice liability for offenses that are not based on an intentional mens rea. The accomplice must have the "kind of culpability" with respect to the result that "is *sufficient for the commission of the offense.*" *Id.* (emphasis added). For the offenses here, that culpability is recklessness.

¶ 23 In short, our statutory scheme permits accomplice liability for one who intentionally promotes or facilitates the perpetrator's *conduct* in committing an offense, even when the culpable mental state for the offense itself is recklessness. This is the express intent of A.R.S. § 13–303(B). It is also consistent with A.R.S. § 13–301: the accomplice has the same mens rea, or "intent to promote or facilitate" the offense, that the principal has. If we were to read A.R.S. § 13–301 to preclude offenses with a reckless mens rea, it would render void that portion of § 13–303(B) that invokes accomplice liability for one "who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense." Such a construction is not favored under the law. *See City of Phoenix v. Yates,* 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949) ("Each word, phrase, clause and sentence [of a statute] must be given meaning so that no part will be void, inert, redundant, or trivial.").

¶ 24 Turning now to the facts before us, while Manuel may not have intended for his brother to shoot and kill someone, he clearly intended to "further" and "aid" his brother's conduct in discharging the weapon into the group of people. Manuel gave his brother an additional clip of ammunition in the heat of battle, after the first clip had been spent, under circumstances in which it was clear that Jason would keep shooting. Thus, Manuel intended to facilitate his broth-

---

7. There are two theories of accomplice liability found in the Model Penal Code in sections 2.06(3) and 2.06(4). Section 2.06(3) is similar to A.R.S. § 13–301 and § 2.06(4) is similar to A.R.S. § 13–303.

er's conduct and was also, at the least, reckless about whether that conduct (1) created a "substantial risk of imminent death," A.R.S. § 13–1201(A) (endangerment counts) (2) showed "extreme indifference to human life ... [and] create[d] a grave risk of death," A.R.S. § 13–1104(A)(3) (second degree murder count), and (3) "cause[d] any physical injury to another," A.R.S. § 13–1203(A)(1) (assault counts). Thus, factually, as well as legally, there was a basis for Manuel's convictions based on accomplice liability.

## B.

¶ 25 Manuel also argues that the Arizona Supreme Court's decision in *State v. Phillips*, precludes accomplice liability for reckless offenses. On the contrary, accomplice liability for reckless offenses was not at issue there. Further, such liability (when warranted on the facts) is completely consistent with *Phillips*.

¶ 26 In *Phillips*, the issue was whether there could be accomplice liability for "the specific intent crime of premeditated murder" when the defendant "neither intended to shoot or kill [the victim] nor physically shot and killed [the victim]." 202 Ariz. at 435, ¶ 32, 46 P.3d at 1056. Whether accomplice liability was appropriate for *reckless* offenses was not at issue. Rather, the state argued that a defendant could be liable "for *all* acts of an accomplice so long as the defendant aided the accomplice in planning or committing *any* related offense." *Id.* at 435, ¶ 35, 46 P.3d at 1056.

¶ 27 The Arizona Supreme Court rejected this argument. It noted that "the State's construction of section 13–303(A)(3) would allow a defendant who did *not* intend to aid in an offense to be an accomplice *to that offense*." *Id.* at 436, ¶ 37, 46 P.3d at 1057. The court held as follows:

> [W]e hold that section 13–303(A)(3) imposes criminal accountability on an accomplice defendant *only for those offenses the defendant intended to aid or aided another in planning or committing*. In this case, if [defendant] did not intend to aid [the principal] in committing murder, he could not be an accomplice *to murder* under the terms of the statute.

*Id.* (first emphasis added). The court made it clear that "by extending accomplice liability to premeditated murder, the State's position ignores the *specific intent* requirement of premeditated murder." *Id.* at 436, ¶ 40, 46 P.3d at 1057 (emphasis added).

¶ 28 Our holding today is completely consistent with *Phillips*. For *any* alleged offenses, *Phillips* made it clear that the intent requirement applies to "*the* offense" that is charged rather than simply "*an* offense" for which a defendant may be criminally accountable. Further, as to the specific intent crime of premeditated murder, *Phillips* was clear that there could be no accomplice liability for such a crime without specific intent on the part of the alleged accomplice. Here, we likewise reinforce that, as to a reckless offense, the culpable mental state with regard to *the* offense at issue must be shown.

¶ 29 Because the issue of reckless offenses was not before the *Phillips* court, that court did not address A.R.S. § 13–303(B). As we discussed above, that section specifically provides for potential accomplice liability if a person "acts with the *kind of culpability* with respect to the result that is sufficient for the commission of the offense" so long as certain conditions are met. *Id.* (emphasis added). This statutory language clearly invokes potential accomplice liability for crimes other than those which are intentional. If not, there would be no need to use the phrase "kind of culpability." Further, in such cases the person is liable "if ... [t]he person aids ... another person .. *in the conduct* causing [the] result." A.R.S. § 13–303(B)(2) (emphasis added).

¶ 30 Nothing in *Phillips* suggests that for reckless offenses there must be a higher mens rea (intentional or knowing) for an accomplice than there is for a principal (recklessness). This is particularly so in the context, also satisfied here, of requiring that there be an *intent* to promote the conduct of the principal that is at issue. *Phillips* does not hold that one must possess a higher mens rea of intentional conduct for a reckless offense when one has the "kind of culpability with respect to the result that is sufficient for the commission of *the* offense." A.R.S. § 13–

303(B) (emphasis added). "The" offenses here (endangerment, assault, and second degree murder) require only a mens rea of recklessness. When an alleged accomplice has that "kind of culpability" he is an accomplice if he intentionally "aids ... the *conduct* causing such result." A.R.S. § 13–303(B)(2) (emphasis added). By supplying, at a minimum, a clip of ammunition to a co-defendant who was in the middle of a shooting spree, defendant clearly satisfied these requirements. Contrary to defendant's argument, *Phillips* supports rather than runs counter to our holding here.

## III.

¶ 31 For the reasons set forth herein, we hold that accomplice liability may apply to a criminal offense requiring a reckless mens rea.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and DONN KESSLER, Judge.