150 P.3d 769

**STATE of Arizona, Appellee,**

v.

**Erik Andrew NELSON, Appellant.**

**No. 1 CA–CR 05–0951.**

Court of Appeals of Arizona,
Division 1, Department E.

Jan. 9, 2007.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Nicholas D. Acedo, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

JOHNSEN, Judge.

¶1 Erik Andrew Nelson appeals his conviction and sentence for negligent homicide. Nelson argues that the trial court erred in instructing the jury on accomplice liability with respect to negligent homicide because the culpable mental state for an offense based on negligence is inconsistent with that required for accomplice liability. In *State v. Garnica*, 209 Ariz. 96, 99 n. 4, ¶16, 98 P.3d 207, 210 n. 4 (App.2004), this court held that accomplice liability could attach to crimes for which the required mental state was recklessness, but we specifically left open for another day whether the same rule applies to a crime based on negligence. Today we hold that one may be convicted as an accomplice to a negligent homicide and therefore affirm Nelson's conviction and sentence.

### *FACTS AND PROCEDURAL HISTORY*

¶2 We view the facts in the light most favorable to sustaining the jury verdict and resolve all reasonable inferences against the appellant. *State v. Tamplin*, 195 Ariz. 246, 246, ¶2, 986 P.2d 914, 914 (App.1999). On the evening of October 28, 2003, Nelson was at a party at the home of Sean Kenyon. Among those present were James Zablocki and Matthew Grey. As the night progressed, Nelson and his friends drank beer and smoked marijuana. Sometime after midnight, while the group was outside, Zablocki directed some antagonistic comments toward Nelson and verbally accosted another guest.

¶3 After everyone except Zablocki went back inside, Nelson and another guest approached the guest that Zablocki had verbal-

ly accosted. They tried to goad him into fighting Zablocki, telling him "We got your back," and "You should just do it." When the guest ignored their efforts, Nelson turned to Grey and told him he was tired of Zablocki pushing everybody around and that he wanted to go outside and "kick his ass." Grey said that sounded like a good idea. Shortly thereafter, Nelson went outside to where Zablocki was sitting in a chair and punched him in the temple. The punch knocked Zablocki unconscious. Nelson hit Zablocki in the face and head about twenty more times and finished with a blow to the chest. After Nelson had punched Zablocki several times, Grey pushed Nelson out of the way and hit or "chin-checked" Zablocki approximately three to five times.

¶ 4 Zablocki was found limp in the chair with his head hanging down, bleeding from his nose, lip, and eye. He was rushed to a hospital, where he died later that morning of blunt force injuries to the head and chest. Which of the several blows that Zablocki sustained actually killed him could not be determined.

¶ 5 Nelson was charged with one count of second-degree murder. In light of the uncertainty about whether Nelson or Grey landed the punch or punches that caused Zablocki's death, over Nelson's objection, the jury was instructed on accomplice liability. This instruction permitted the jury to find Nelson guilty if it found that Grey killed Zablocki and that Nelson was Grey's accomplice in the killing.

¶ 6 Nelson was convicted of the lesser-included offense of negligent homicide. The superior court sentenced him to a presumptive 2.5–year prison term. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031, and –4033(A)(1) (2001).

## DISCUSSION

¶ 7 Nelson argues the trial court erred in instructing on accomplice liability with respect to negligent homicide because, he contends, it is legally impossible to be an accomplice to a negligent homicide. We re-

view this issue *de novo* as it involves statutory construction and a question of law. *State v. Stroud*, 209 Ariz. 410, 414, ¶ 18, 103 P.3d 912, 916 (2005).

¶ 8 "A person commits negligent homicide if with criminal negligence such person causes the death of another person." A.R.S. § 13–1102(A) (2001 & Supp.2006). "Criminal negligence" is defined in A.R.S. § 13–105(9)(d) (2001 & Supp.2006) as a failure to "perceive a substantial and unjustifiable risk that the result will occur . . . ."

¶ 9 Pursuant to A.R.S. § 13–303(A)(3) (2001), "[a] person is criminally accountable for the conduct of another if: ... [t]he person is an accomplice of such other person in the commission of an offense." The term "accomplice" is defined, in pertinent part, as follows:

"[A]ccomplice" means a person ... who with the intent to promote or facilitate the commission of an offense:

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense[;]

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13–301 (2001).

¶ 10 Nelson claims that accomplice liability may not be applied to an offense such as negligent homicide with an unintentional culpable mental state because the definition of accomplice requires that a person act intentionally. In *Garnica*, we addressed whether a person may be an accomplice to a crime that requires a mental state of only recklessness. The defendant in that case was convicted of reckless endangerment, second-degree murder and aggravated assault, each of which is premised on recklessness. *Garnica*, 209 Ariz. at 98, ¶ 11, 98 P.3d at 209. On appeal, he argued that the trial court erred in instructing the jury on accomplice liability because, he contended, the statutory definition of accomplice precludes accomplice liability for an "unintentional offense." *Id.* at ¶¶ 12–13.

¶ 11 After reviewing decisions from other jurisdictions, we found Alaska's treatment of this issue in *Riley v. State*, 60 P.3d 204

(Alaska App.2002), to be both representative of the majority rule and persuasive. *Garnica*, 209 Ariz. at 100, ¶ 18, 98 P.3d at 211. We agreed with the Alaska court that it would be incongruous to permit a principal to be convicted based on proof of recklessness but to require proof of intentional conduct to convict an accomplice. *Id.* at 100–01, ¶ 20, 98 P.3d at 211–12. Like the Alaska court, we concluded that the "with the intent to promote or facilitate the commission of an offense" language in the definition of accomplice in A.R.S. § 13–301 requires only proof of intent to promote or facilitate the *conduct* of another, rather than proof of intent to promote or facilitate some unintended result of the conduct. *Id.* at 101, ¶ 23, 98 P.3d at 212. We observed that this construction is supported by A.R.S. § 13–303(B). *Id.* This statute provides:

> If causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense if:
>
> 1. The person solicits or commands another person to engage *in the conduct* causing such result; or
>
> 2. The person aids, counsels, agrees to aid or attempts to aid another person in planning or engaging *in the conduct* causing such result.

A.R.S. § 13–303(B) (emphasis added).

¶ 12 Because the offenses at issue in *Garnica* required a culpable mental state of recklessness and not negligence, we declined to address whether accomplice liability may apply also to offenses with a culpable mental state of criminal negligence. 209 Ariz. at 99 n. 4, ¶ 16, 98 P.3d at 210 n. 4. Nothing in A.R.S. §§ 13–301 or 13–303 suggests, however, that a different rule for accomplice liability should apply to offenses with a culpable mental state of criminal negligence. In construing a statute, the court first considers the statute's language because it is the best and most reliable evidence of the legislature's intent. *See State v. Jenkins*, 193 Ariz. 115, 119, ¶ 11, 970 P.2d 947, 951 (App.1998). "We

will refrain from construing a statute to require something not within the plain intent of the legislature as expressed by the language of the statute." *State v. Affordable Bail Bonds*, 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App.2000). Accordingly, we hold that the construction given in *Garnica* to accomplice liability under A.R.S. §§ 13–301 and 13–303 for reckless offenses is equally applicable to offenses with a culpable mental state of criminal negligence.

¶ 13 Although, as *Garnica* noted, the majority rule appears to permit accomplice liability for crimes that do not require an intentional culpable mental state, our holding is compelled by Arizona statutes, specifically, §§ 13–303 and 13–301. Section 13–303(A) recites the circumstances under which one may be "accountable for the conduct of another." As noted above, subsection 13–303(A)(3) states that one may be held accountable for the conduct of another if one is that person's "accomplice ... in the commission of an offense." Section 13–301, in turn, defines "accomplice" as one who acts "with the intent to promote or facilitate the commission of an offense." A.R.S. § 13–301.

¶ 14 Nelson's argument that section 13–301's intent requirement is inconsistent with a negligent offense overlooks subsection 13–303(B), which provides that when the underlying offense has as an element "causing a particular result," one may be liable as an accomplice if he acts with a mental state "sufficient for the commission of the offense" and "solicits or commands another person to engage in the conduct causing such result[.]" A.R.S. 13–303(B)(1) (emphasis added).[1]

¶ 15 Thus, while section 13–301 states the general rule that one may be an accomplice only if one acts with intent to promote or facilitate the commission of an offense, subsection 13–303(B) sets out a different culpable mental state requirement for an accomplice to a crime that has as one of its elements "causing a particular result." As to such a crime, pursuant to subsection 13–303(B), one may be liable as an accomplice if one commands or aids an-

---

1. Alternatively, A.R.S. § 13–303(B)(2) provides for accomplice liability when one acts with a mental state "sufficient for the commission of the offense" and "aids, counsels, agrees to aid or attempts to aid another person in planning or engaging in the conduct causing such result."

other "in the conduct" that causes the required result. As one commentator notes:

> Whereas A.R.S. § 13–301 requires an explicit intent to promote or facilitate the commission of an offense, subsection (B) creates liability whenever the defendant acts with any one of the four mental states that apply to the prohibited result, e.g., recklessly inciting another to damage property. Subsections (A)(2) and (3) and (B)(1) and (2) determine liability by coupling one defendant's mental state with another defendant's resulting conduct.

1 Rudolph J. Gerber, *Criminal Law of Arizona* 303–2 (2d ed. 1993 & Supp.2000).

¶ 16 In *Garnica*, we noted that *State v. Locke*, 144 N.H. 348, 761 A.2d 376, 379 (1999), drew a distinction between negligent and reckless conduct for purposes of accomplice liability. 209 Ariz. at 99 n. 4, ¶ 16, 98 P.3d at 210 n. 4. The New Hampshire accomplice statute at issue in that case did not contain a provision similar to our section 13–303(B), however, and, in any event, the case on which *Locke* relied, *State v. Etzweiler*, 125 N.H. 57, 480 A.2d 870, 873 (1984), has since been overruled. *See State v. Anthony*, 151 N.H. 492, 861 A.2d 773, 775–77 (2004) (adopting majority rule and holding that accomplice liability exists for negligence offenses).[2]

¶ 17 On appeal, Nelson cites *State v. Adams*, 155 Ariz. 117, 745 P.2d 175 (App. 1987), but that case is distinguishable. In *Adams*, this court held that attempted reckless manslaughter and attempted negligent homicide are not cognizable offenses. *Id.* at 120, 745 P.2d at 178. We reasoned that the word "planned" in the attempt statute, A.R.S. § 13–1001(A) (2001), "clearly anticipates an intentional act or step by a defendant which is 'planned,' that is, designed or intended to culminate or end in the commission of the offense." *Id.* We also agreed with the reasoning of cases from other jurisdictions "that there is no such criminal offense as an attempt to achieve an unintended result." *Id.* By contrast, for accomplice liability to exist, subsection 13–303(B) only requires proof of intent to promote or facilitate the *conduct* of another, not proof of intent to promote or facilitate the unintended result of the conduct. *Garnica*, 209 Ariz. at 101, ¶ 23, 98 P.3d at 212.

¶ 18 Given the nature of the injuries inflicted on Zablocki, his beating certainly created a substantial and unjustifiable risk of death. Nelson may not have intended for his conduct or that of Grey to cause the death, or even been aware of the risk of that result, but the evidence established that their conduct did cause the death. The evidence also was sufficient to support a finding that, in addition to hitting the victim himself, Nelson acted with intent to promote or facilitate Grey's participation in the beating. Thus, even if Zablocki's death was caused by a blow from Grey rather than from Nelson, Arizona's accomplice liability statutes permit holding Nelson criminally accountable for the death as an accomplice. Consequently, the superior court did not err in instructing the jury on accomplice liability with respect to the charge of negligent homicide.

### CONCLUSION

¶ 19 We hold that a person may be convicted as an accomplice to an offense with a culpable mental state of criminal negligence. Thus, the superior court did not err in instructing the jury on accomplice liability with respect to negligent homicide. Nelson's conviction and sentence therefore are affirmed.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and PATRICIA K. NORRIS, Judge.

---

**2.** The court in *Anthony* noted that after the decision in *Etzweiler*, the New Hampshire accomplice liability statute was amended to provide that with respect to a crime that requires causing a particular result, "it shall not be necessary that the accomplice act with a purpose to promote or facilitate the offense," but instead that a defendant may be found liable as an accomplice "in the conduct causing such result." *Anthony*, 861 A.2d at 775. This legislative change, of course, puts New Hampshire's accessory liability statute in line with our section 13–303(B).