NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

STEPHEN CONRAD JOHNSON, *Appellant*.

No. 1 CA-CR 13-0417
FILED 06-19-2014

---

Appeal from the Superior Court in Mohave County
No. S8015CR201200356
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jon W. Thompson joined.

---

**H O W E**, Presiding Judge:

¶1          Stephen Conrad Johnson appeals his convictions and sentences for two counts of aggravated assault, class three felonies and repetitive dangerous offenses; one count of misconduct involving weapons, a class four felony and non-dangerous but repetitive offense; and one count of disorderly conduct involving weapons, a class six felony, and repetitive dangerous offense. Johnson challenges the trial court's ruling denying his requested instruction to the jury on self-defense as justification to the charged crimes. Johnson also argues the court reversibly erred by coercing the jury's verdicts.  Finally, Johnson contends the court violated his due process rights by denying his request to continue the aggravation and mitigation hearing so he could present additional mitigation evidence. For the following reasons, we disagree with Johnson's assertions of error and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          The trial evidence, viewed in the light most favorable to sustaining the verdicts,[1] reveals the following.  Shortly before 11:00 a.m. on March 10, 2012, Johnson walked into a truck stop convenience store wearing a pulled-up hoodie, sunglasses, and a blue cloth or bandana covering his lower face. At trial, the evidence conflicted on whether Johnson purchased a bag of candy and either demanded money from the cashier saying that he had a gun, or said nothing about the gun and asked for a pack of cigarettes. Whatever occurred, however, Johnson was confronted by another employee JA, who tried to remove Johnson's face covering. Johnson resisted, pulled out a handgun and pointed it at JA's face. Other customers and employees in the store dropped to the floor and scattered upon noticing the gun. A store employee called 911 when she learned from the cashier that Johnson was purportedly attempting to rob the store.

¶3          Johnson ran from the store followed by JA and TV, the store's maintenance manager. JA and TV chased Johnson not to capture him, but to "keep him in sight" to assist police in locating him. At some point during the foot chase, Johnson turned, pulled out his handgun, and fired a "warning shot" before lowering the gun and pointing it at TV, who

---

[1]     *See State v. Nelson*, 214 Ariz. 196, 196 ¶ 2, 150 P.3d 769, 769 (App. 2007).

was approximately forty to fifty feet away. TV believed Johnson was going to shoot him. A passer-by, DN, who was in his truck when he noticed the chase, joined TV in pursuing Johnson and was next to TV when Johnson fired the shot into the air. Police officers subsequently intervened and apprehended Johnson.

¶4        The State charged Johnson with one count of attempted armed robbery and three counts of aggravated assault, one each relating to the victims JA, TV, and DN. The State further charged Johnson with one count of misconduct involving weapons[2] and disorderly conduct involving a weapon. Johnson testified that he covered his face in the store because he had been receiving threats to this life, and he was afraid the people who made the threats would recognize him in a public place. Based on this testimony, Johnson also testified that he pointed the gun at JA, someone he claimed not to recognize as a store employee, after she tried to pull off his mask  and he "realized I couldn't get away from her, [and] I was in fear for my life."

¶5        After the close of evidence, Johnson requested a self-defense jury instruction. The court denied the request, concluding that no trial evidence supported the proposed instruction because, although the trial evidence showed Johnson could have feared for his life based on the prior threats he received, no evidence showed that "anybody involved in this case . . . engaged in unlawful deadly physical force" against Johnson. Immediately after the court's ruling, defense counsel informed the court the self-defense instruction was necessary "[b]ecause that's what I'm going to argue to the jury." Counsel then argued during closing argument that Johnson acted in self-defense, despite the trial court's refusal to instruct the jury on self-defense.

¶6        After the jury commenced deliberations, the forewoman notified the court that the jury had reached verdicts on three of the counts, but was unable to do so on the remaining three counts.  With no objection from either party, the court instructed the jurors on their apparent impasse pursuant to Arizona Rule of Criminal Procedure 22.4. The jury continued deliberating and approximately one hour later informed the court that "one juror was not fully engaged in the deliberations and is not open to discussion." The jury also asked the court whether "self-defense

_____

[2]        Johnson stipulated at trial that, because of prior felony convictions, he was prohibited from possessing a firearm and his civil right to possess or carry a gun or firearm had not been restored.

[is] applicable in all issues in this case[,]" and "Are [JA's] actions just cause for the defendant to draw a gun? Can the issues of self-defense be taken into consideration?" The forewoman addressed the court, and stated: "I think if we had some clarification on those questions [regarding self-defense] . . . perhaps we could [continue further deliberations and reach a decision on the charges]." Based on the jury's apparent confusion over the applicability of self-defense to the case, the trial court, over Johnson's objection, instructed the jury on self-defense in a manner consistent with Arizona law.

¶7         The jury subsequently returned verdicts finding Johnson guilty of the aggravated assaults committed against JA and TV and guilty of the misconduct involving weapons and disorderly conduct charges. The jury could not reach a decision on the charges of attempted armed robbery and aggravated assault against DN. At the hearing on mitigation and the State's alleged aggravating factors, Johnson presented the court with a Rule 26.5 evaluation report prepared by Dr. S. as evidence of mitigation, but requested a continuance so that his investigator could interview Johnson at the jail and so that he could present further evidence in the form of Dr. S.'s testimony. The court denied the request.

¶8         Upon considering and weighing the evidence of aggravation and mitigation, the court sentenced Johnson to an aggravated prison term of twenty years for his aggravated assault conviction relating to JA to be served consecutive to the slightly aggravated sentence of thirteen years' imprisonment for the aggravated assault conviction regarding TV. The court imposed a mitigated sentence of eight years in prison for the weapons misconduct conviction to run concurrently with the thirteen-year aggravated assault conviction. Also to run concurrently with these two sentences, the court imposed an aggravated term of four-and-a-half years' imprisonment for the disorderly conduct conviction. Johnson timely appealed.

**DISCUSSION**

I.     Self-Defense Instruction

¶9         Johnson argues that the court erred in initially refusing to give the requested self-defense instruction because the evidence supported it. "The decision to refuse a jury instruction is within the trial court's discretion, and this court will not reverse it absent a clear abuse of that discretion." *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶10        A defendant is entitled to an instruction on self-defense if the slightest evidence of justification exists for his act. *State v. Buggs*, 167 Ariz. 333, 335, 806 P.2d 1381, 1383 (App. 1990). The "slightest evidence" is evidence which tends to prove a hostile demonstration which might be reasonably regarded as placing the accused in imminent danger of losing his life or sustaining great bodily harm. *Id.*; *see also* A.R.S. § 13-404(A) ("[A] person is justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force."); A.R.S. § 13-405(A) (1), (2).

¶11        The record does not indicate that anyone involved in this case used or attempted to use unlawful deadly force against Johnson; rather, the only evidence of threats to Johnson's life were from people not involved in this case, and those threats occurred before the March 10 incident.  Accordingly, the trial court did not abuse its discretion in failing to initially instruct the jury on self-defense.  In any event, even if the court did err in this respect, any prejudice to Johnson was cured when the court instructed the jurors on self-defense after they indicated confusion on whether self-defense applied to this case.

II.        Coercion of Verdicts

¶12        Johnson argues that the court's decision to instruct the jury on self-defense coerced the verdicts. He claims that the instruction "necessarily put improper pressure on the hold out juror . . . and likely influenced that juror to change its position and reject self-defense on at least one of the counts."[3]

---

[3]        Although Johnson asserts the court's ruling on this issue established a Sixth Amendment violation, he provides no substantive argument in support of this assertion. Arizona Rule of Civil Appellate Procedure 13(a)(6) requires that an appellant's opening brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Failure to comply with the rule's requirements results in waiver of the argument. *See State Farm Mut. Auto. Ins. Co. v. Novak*, 167 Ariz. 363, 370, 807 P.2d 531, 538 (App. 1990) (court declined to consider matters for which party failed to comply with Rule 13(a)(6)); *Modular Sys., Inc. v. Naisbitt*, 114 Ariz. 582, 587, 562 P.2d

**¶13**　　　　We review the court's decision to provide additional instruction to the jury regarding self-defense for an abuse of discretion. *See State v. Kuhs*, 223 Ariz. 376, 384 ¶ 42, 224 P.3d 192, 200 (2010) ("We review a trial court's response to jurors for an abuse of discretion."). An abuse of discretion occurs when "no reasonable judge would have reached the same result under the circumstances." *State v. Armstrong*, 208 Ariz. 345, 354 ¶ 40, 93 P.3d 1061, 1070 (2004). In determining whether the court abused its discretion and coerced the jury, we consider "the actions of the judge and the comments made to the jury based on the totality of the circumstances and [we] attempt[] to determine if the independent judgment of the jury was displaced." *State v. Huerstel*, 206 Ariz. 93, 97 ¶ 5, 75 P.3d 698, 702 (2003).

**¶14**　　　　Initially, the record does not support Johnson's assertion that the trial court interpreted the jury's comment regarding the hold-out juror "as proof of possible juror misconduct." Further, Johnson's contentions regarding the purported coercive effect the self-defense instruction had on the hold-out juror are speculative. Nothing in the record indicates that the court knew that the hold-out juror was not properly deliberating because he or she held some erroneous belief regarding the law of self-defense and its applicability in this case. Nothing shows that the hold-out juror, or any of the other jurors, did not properly understand the instruction.

**¶15**　　　　In any event, Johnson's argument regarding the coercive effect the additional self-defense instruction had on the verdicts fails on the merits. In conformance with the comment to Arizona Rule of Criminal Procedure 22.4, the court expressly informed the jury in the impasse instruction (that directly led to the jury's request an hour later for information on self-defense):

> This instruction is offered to help you, not to force you to reach a verdict. . . . We are merely being responsive to your apparent need for help. . . . [Y]ou should not change your belief concerning the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict. . . . If you decide . . . [further

1080, 1085 (App. 1977) (issues deemed abandoned when party "failed to state with any particularity why or how the trial court erred in making these rulings and simply concludes that error was committed"). We therefore deem this specific issue waived and do not address it.

assistance is necessary on] issues [of] . . . law . . . advise me in writing of whether we can attempt to assist you . . . [in] reach[ing] a verdict[.] . . . I do not wish or intend to force a verdict.

¶16 This instruction clearly indicates that the court's invitation to further deliberate and request assistance if necessary did not lead to coerced verdicts when the court provided the self-defense information that the jury subsequently desired. *See State v. Dunlap*, 187 Ariz. 441, 465, 930 P.2d 518, 542 (App. 1996) (finding similar instruction "made it clear that the trial court was not pressuring the jurors to sacrifice their convictions to reach a verdict").

¶17 Although the court here knew that one juror was holding out, nothing in the record indicates that juror favored acquittal on all counts or any particular count. And Arizona law does not recognize *per se* coercion when the court knows the numerical split of a jury at impasse. *State v. Sabala*, 189 Ariz. 416, 418-19, 943 P.2d 776, 778-79 (App. 1997). Finally, the fact the jury deliberated for over two-and-a-half hours after receiving the self-defense instruction indicates the instruction did not coerce the verdicts. *See id.* at 420, 943 P.2d at 780 (thirty minutes of deliberating after receiving additional instructions to assist a deadlocked jury "suggest that the holdout juror changed position as a result of receiving clarifying information not that he or she surrendered 'honest convictions' due to overbearing pressure from the court.").

¶18 Based on the foregoing, and considering the totality of the circumstances – including the parties' references to self-defense during closing arguments, the resulting confusion to the jury regarding the application of self-defense to this case, and the jury's explicit assertion that further instructions on self-defense would assist further deliberations—we cannot conclude the self-defense instruction displaced "the independent judgment of the jury[.]" *Huerstel*, 206 Ariz. at 97 ¶ 5, 75 P.3d at 702. Accordingly, the court did not abuse its discretion in giving the supplemental self-defense instruction. Indeed, under these circumstances, the court had a "responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria." *State v. Ramirez*, 178 Ariz. 116, 126, 871 P.2d 237, 247 (1994) (quoting *Des Jardins v. State*, 551 P.2d 181, 190 (Alaska 1976), and *Bollenbach v. United States,* 326 U.S. 607, 612-13 (1946)).

III.    Court's Refusal to Continue Mitigation Hearing

¶19    Finally, Johnson argues that the trial court denied him his due process right to present evidence by refusing to grant his request for a continuance of the aggravation and mitigation hearing. We review for an abuse of discretion. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990) ("The granting of a continuance is within the discretion of the trial court, and its decision will only be disturbed upon a showing of a clear abuse of such discretion and prejudice to defendant.").

¶20    Here, Johnson did not make an offer of proof about what the additionally sought mitigation evidence would be. Thus, he cannot challenge the court's ruling "unless the substance [of the excluded evidence] was apparent from the context." *See* Ariz. R. Evid. 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."). *Id.* The substance of the evidence Johnson sought in a continued hearing is not "apparent from the context." Additionally, Johnson's request at the hearing was untimely. Furthermore, the court did admit as mitigation evidence Dr. S.'s report and evidence of Johnson's abuse as a child, his history of substance abuse and mental illness, and his remorse for his actions. As noted, the court expressly considered the mitigation evidence that was presented.

¶21    On this record, we cannot conclude the trial court acted outside its discretion in denying Johnson's request for a continuance of the mitigation hearing.

**CONCLUSION**

¶22    Johnson's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

8