NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MATTHEW BRIAN SEGUNDO, *Appellant.*

No. 1 CA-CR 25-0186

FILED 04-16-2026

Appeal from the Superior Court in Maricopa County
No. CR2022-143522-001
The Honorable Patricia A. Starr, Judge

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

_____

**W E I N Z W E I G**, Vice Chief Judge:

**¶1**       Mathew B. Segundo appeals his convictions and sentences for sexual abuse, public sexual indecency, aggravated assault, five counts of molestation of a child and sexual conduct with a minor.  We vacate his convictions and sentences because it was fundamental error to admit Segundo's uncharged sexual acts without proper disclosure or analysis by the superior court.  We remand for a new trial consistent with this decision.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**       We view and thus recount the facts in the light most favorable to sustaining the jury's verdicts.  *See State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).  We use pseudonyms to protect the victims' identities.  Ariz. R. Sup. Ct. 111(i).

*Ana*

**¶3**       Segundo had a daughter, Ana, who was mostly absent from his life until 2016, when he moved to his sister's home, where Ana visited on weekends and school breaks.  Ana was around eleven years old and shared a bed with Segundo when she visited.

**¶4**       During one of those visits, Segundo grabbed Ana's hand while she pretended to be asleep and used it to masturbate himself.  He also placed his hand up her thigh and touched her vagina.  Another time, he placed his penis into Ana's mouth while she slept.  For those acts, the State charged Segundo with two counts of molestation of a child and one count of sexual conduct with a minor.

**¶5**       Ana reported the crimes to police in 2021.  Given the time gap between abuse and report, no physical evidence was recovered.  Police arranged a recorded confrontation call during which Ana tried to prompt Segundo to confess, but he said nothing.  A recording of that call would later be played for the jury.

¶6            Segundo met a woman in early 2018 who had two daughters, Sandra and Gina.  They all moved in together that October.

*Sandra*

¶7            When Sandra was thirteen or fourteen, Segundo entered her bedroom, forced her to undress, fondled her breasts, masturbated himself, put his hand on her inner thigh and ejaculated onto her.  A different time, Segundo forced Sandra into a bathroom and made her masturbate him.  The State charged him with sexual abuse, public sexual indecency, aggravated assault and molestation of a child for those acts.

*Gina*

¶8            Gina was seven or eight years old when Segundo took her into the garage, used her hand to masturbate himself and ejaculated onto her.  Sandra walked into the garage as Segundo pulled up his pants, but he left before Sandra could get their mother.  Segundo repeated this sexual abuse another time in his own bedroom.  The State charged him with two counts of molestation of a child for those acts.

¶9            Segundo threatened to kill Sandra, Gina and their family if they talked.  But in November 2022, Sandra disclosed the abuse to her best friend, along with the school principal.  Police investigated and arrested Segundo.  They searched his home and devices, but found no physical or electronic evidence.

*Trial*

¶10            The State tried Segundo in February and March 2025.  Segundo trained his entire defense on a single target: the credibility of all three victims.  He challenged every inconsistency and called live-in family members who saw nothing.  Sandra admitted she had lied frequently to her mother about boys and sneaking out around the time of the offenses.  And at first, Sandra said Segundo sexually assaulted her on a top bunk, but the prosecutor later helped Sandra remember there was no top bunk.

¶11            For its part, the State introduced testimony about five uncharged sexual acts: (1) Sandra testified that Segundo boasted of doing "stuff" to Ana and another unidentified girl; (2) Sandra testified that Segundo touched her behind in her bedroom; (3) Ana testified that Segundo "would sit on the couch and have his penis out and fall asleep;" (4) Ana testified that Segundo stood at the foot of Sandra's bed while Sandra slept, adding he had done that "many times" to Ana too; (5) Ana testified that

Segundo molested her in her bed "many times," even though Segundo was only charged with two counts of molestation.

¶12        The State never disclosed its intent to introduce any of these uncharged acts before trial, but Segundo never objected, so the other act evidence was admitted without an evidentiary hearing or findings under Arizona Rule of Evidence 404. No jury instructions were offered about the other acts.

¶13        The jury convicted Segundo on all nine counts.

¶14        At sentencing, the superior court first ordered Counts 1, 2 and 3 to run concurrently. The State interjected, arguing the statute required consecutive sentences. The court agreed and sentenced Segundo to life in prison on Count 9, with 91.5 more years running consecutively on the remaining counts. We have jurisdiction over Segundo's timely appeal. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

¶15        Segundo argues the State elicited inadmissible other-acts evidence and improperly used his silence on the confrontation call as substantive evidence of guilt. He also argues he received a longer sentence because the superior court misread the applicable sentencing statute. Because the other-acts issue is dispositive, we need not reach the other arguments.

## I.        Arizona Rule of Evidence 404.

¶16        Evidentiary issues are reviewed for an abuse of discretion. *State v. Vega*, 228 Ariz. 24, 26, ¶ 6 (App. 2011). Because Segundo did not object at trial, we review for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). We first ask whether an error occurred. *Id.* at 142, ¶ 21.

¶17        Evidence of other, uncharged prior bad acts is generally inadmissible. *State v. Terrazas*, 189 Ariz. 580, 582 (1997). Rule 404 carves two narrow exceptions. First, other-act evidence may be admissible for a non-propensity purpose under Rule 404(b), including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b)(2). The State must first disclose its intent to use the evidence and the purpose of that evidence. Ariz. R. Evid. 404(b)(3). The superior court must then find "that there is clear and convincing proof both as to the commission of the other bad act and that

the defendant committed the act." *State v. Allen*, 253 Ariz. 306, 333, ¶ 57 (2022) (quoting *State v. Anthony*, 218 Ariz. 439, 444, ¶ 33 (2008)). The court must also "(1) find that the act is offered for a proper purpose under Rule 404(b); (2) find that the prior act is relevant to prove that purpose; (3) find that any probative value is not substantially outweighed by unfair prejudice; and (4) give upon request an appropriate limiting instruction." *Anthony*, 218 Ariz. at 444.

¶18            Second, other-act evidence may be admitted in a sexual-offense case under Rule 404(c) to show the defendant had "a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Here again, the State must offer pretrial notice of its intent to use the evidence. Ariz. R. Evid. 404(c)(3). On top of that, the superior court must find (1) the defendant committed the uncharged act by clear and convincing evidence, (2) the act supports a reasonable inference of aberrant sexual propensity and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice or other factors under Rule 403. Ariz. R. Evid. 404(c)(1); *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004). When the court admits such evidence, it must instruct the jury on its proper use. Ariz. R. Evid. 404(c)(2).

¶19            None of that happened here. The State gave no pretrial notice. The superior court held no hearing, made no findings, identified no purpose and gave no jury instructions on the proper use of such evidence. All five uncharged-act references sailed into trial without objection or a single procedural check. Each describes a distinct act separate from the charged offenses, and none is so closely intertwined with a charged act as to be "part of the charged act itself." *See State v. Ferrero*, 229 Ariz. 239, 242, ¶ 14 (2012). The evidence was erroneously admitted.

¶20            The State concedes the acts were admitted without satisfying Rule 404's requirements, but argues any error was harmless because the evidence would have been admissible had the proper procedures been followed. But that argument can only succeed if the record contains substantial evidence for this court to determine "that the requirements of admissibility were met." *Aguilar*, 209 Ariz. at 50, ¶ 37. This record has no such evidence. The superior court made no findings and weighed no factors. It never even addressed the threshold requirement of whether the acts were proven by clear and convincing evidence. With vague acts, no findings and no corroborating evidence, we have nothing to evaluate. *Compare id.* at 50, ¶ 37 (record insufficient to affirm 404(c) admission on appeal), *with Vega*, 228 Ariz. at 29, ¶¶ 18–19 (any error was harmless where a mid-trial evaluation by the court supplied the necessary detail).

5

**¶21** We decline to remand for a limited Rule 404(b) evidentiary hearing because the lack of notice caused independent harm. Pretrial disclosure rules exist to prevent surprise and allow the parties to prepare for trial. *Cf. Carpenter v. Superior Court*, 176 Ariz. 486, 488 (App. 1993) (Criminal discovery rules exist in part "so as to avoid unnecessary delay and surprise at trial."). Segundo received none of that. He had no opportunity to investigate the acts, develop counter-evidence or prepare a response. A limited remand would not cure this independent harm.

## II.     Fundamental Error and Prejudice.

**¶22** The admission of the uncharged-act evidence without any Rule 404 analysis was fundamental and prejudicial error. "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 142, ¶ 21. "An error generally goes to the 'foundation of a case' if it . . . directly impacts a key factual dispute." *Id.* at 141, ¶ 18. An error is prejudicial upon "a showing that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Id.* at 144, ¶ 31.

**¶23** The error was fundamental because this case hinged on whether the jury believed the victims. Nothing else. Evidence of prior bad acts is inadmissible as propensity evidence precisely because it suggests to the jury that the defendant committed the alleged crime based on their previous behavior. *See State v. Mincey*, 130 Ariz. 389, 404 (1981). Five unscreened, uncharged acts bolstered the State's theory and undermined the only defense Segundo had. The error struck at the foundation of the case.

**¶24** And Segundo suffered substantial prejudice because the uncharged acts entered trial through a back door that Rule 404(c) was designed to seal. The rationale for Rule 404(c)'s stringent requirements is that:

> the prosecution's evidence of other instances of sexual conduct will often involve sexual behavior that is legally as well as socially abhorrent and thus is more likely to lead the trier of fact to punish the defendant because, in sexual matters, he is a bad man, not because it has decided he has committed the sexual wrong charged in the case at hand.

*Aguilar*, 209 Ariz. at 49, ¶ 31 (quoting 1A John Henry Wigmore, *Evidence in Trials at Common Law* § 62.3 (1983)); *see also State v. Rix*, 256 Ariz. 125, 133, ¶ 21 (App. 2023) ("[G]iven the nature of sexually aberrant acts, they run the risk of being so highly prejudicial as to be nearly dispositive, making the guilty verdict almost a formality.") (citation modified). Five references to other acts invite the same conclusion here.

**¶25** Without the improperly admitted other-acts evidence, a reasonable jury could have weighed things differently and reached a different verdict. *See Escalante*, 245 Ariz. at 144, ¶ 31.

## CONCLUSION

**¶26** Because the superior court admitted testimony of Segundo's uncharged prior acts without the disclosure, findings or limiting jury instruction required by Rule 404, we vacate his convictions and sentences and remand for a new trial.

