748 P.2d 1187

**Sharon VOLZ and Valley National Bank, as co-conservators for and on behalf of Shannon Haddix, a Protected Minor, Plaintiffs/Appellees,**

v.

**The COLEMAN COMPANY, INC., Defendant/Appellant.**

**No. 2 CA–CIV 5595.**

Court of Appeals of Arizona, Division 1, Department B.

April 2, 1986.

Lewis and Roca, Phoenix by Douglas L. Irish, Susan M. Freeman and Stephen M. Bressler and Kimble, Gothreau, Nelson & Cannon, P.C., Tucson, for defendant/appellant.

Law Offices of Richard D. Grand, Tucson, for plaintiffs/appellees.

## OPINION

LIVERMORE, Presiding Judge.

Shannon Haddix was severely burned when Ron Volz's Coleman Camp Stove experienced a sudden release of pressure causing it to eject a stream of fuel some ten to twelve feet across an open campfire and onto Shannon. Coleman appeals from jury awards of $6.8 million compensatory damages and $1.06 million punitive damages. We affirm.

Defendant presents two compound issues which can be summarized as follows:

1) The court prejudicially erred in several of its decisions to admit or exclude evidence; and,

2) The court erred in allowing the Jury to consider and award punitive damages.

### Testimony and Evidence

Volz's stove was equipped with a vented gas cap; there was a hole in its side through which pressurized air could escape as the cap was removed for refueling. Volz testified that the stream of gas came from the vicinity of that hole despite his having tightened the cap shortly before. Whether such an occurrence was possible and, if so, under what circumstances, became the key issue at trial.

Plaintiff's expert, John Sevart, hypothesized how pressure and fuel could escape from a recently tightened "vent-hole" cap. Accepting that it had not been intentionally loosened, he suggested that the cap had been inadvertently loosened or that the sudden release of a sticky gasket or a foreign object that had been lodged in the cap exposed the vent hole causing the fuel to react as if the cap had been loosened. His opinions were premised on tests he had conducted. Defendant's expert, Randy May, theorized that the cap was not the cause of the accident, that it had not even been on the tank during the mishap, but that Shannon had been burned during sloppy refueling or while gas was being used to start a campfire.

The trial judge admitted into evidence Sevart's videotape of how a stream of fuel

could be expelled and permitted Sevart to present his hypotheses. Randy May was permitted to opine that the accident could not have occurred as Volz said and to cite the evidence supporting his opinion, but was denied the opportunity to present his theory of causation. Defendant challenges all those decisions. It further argues that design-change evidence and hearsay evidence were improperly admitted.

### a) Videotape

■ John Sevart's videotape showed how a Coleman vent-hole cap could be made to eject a stream of gas consequent to a sudden pressure release. Sevart caused the pressure release by intentionally unscrewing the cap. Coleman asserts the videotape was prejudicially misleading because loosening the cap created materially different conditions than those existing at the time of the accident.

When used in an attempted replication of the litigated event, courts generally insist that conditions in the experiment substantially match the circumstances surrounding that event. *Payne v. Greenberg Construction*, 130 Ariz. 338, 636 P.2d 116 (App. 1981); McCormick on Evidence § 202 (3rd ed. 1984). However, when the experiment is not a purported replication but is more in the nature of a demonstration, it is appropriately admitted if it fairly illustrates a disputed trait or characteristic. *Rayner v. Stauffer Chemical Co.*, 120 Ariz. 328, 585 P.2d 1240 (App.1978); *Wagner v. Coronet Hotel*, 10 Ariz.App. 296, 458 P.2d 390 (1969). Plaintiff asserted that the reason for showing the videotaped experiment was to show that the stove's tank could shoot liquid fuel to distances exceeding 15 feet. That was a proper purpose. It demonstrated the stream of fuel that Volz testified occurred in this case. The differences in conditions causing that stream were made clear to the jury; there was no substantial risk that the demonstration would mislead the trier.

### b) Expert Testimony

■ Coleman attacks the judge's decision to let Sevart hypothesize causation but limit May's testimony. Whether a witness is competent to testify as an expert and whether his proposed testimony is within the realm of his expertise are matters primarily for the trial court and largely within its discretion. *Englehart v. Jeep Corporation*, 122 Ariz. 256, 594 P.2d 510 (1979). The test is whether the witness possesses special knowledge which, when applied to the facts, will aid the jury in resolving a particular issue.

■ We believe there was sufficient foundation to allow Sevart's expert opinion. First, it relied on Volz's eyewitness account of how the event happened. Second, it was supported by testing. Third, it was predicated upon basic laws of fluid mechanics and engineering principles of "human factors" machine design, fields in which Sevart possessed special expertise.

■ In contrast, to the extent it was precluded, May's testimony was not sufficiently beyond the common knowledge of ordinary persons as to have assisted them in explaining results or tracing those results to their causes. *Englehart v. Jeep Corp.*, supra. May was permitted to express his belief that the accident did not occur as Volz stated and to present salient facts supporting that belief. What was prevented was the positing of scenarios contradictory to Volz's eyewitness account. It was for the jury to believe or disbelieve Volz. If they chose to discredit his story, their normal experience would have enabled them to draw the conclusion that the defective cap had not caused the accident and that a prima facie case had not been presented. May was not an expert on what the truth was on the assumption Volz was lying. His opinion, therefore, was properly precluded.

### c) Design Change Evidence

■ Coleman objects to the admission of a 1963 internal memorandum and a 1967 patent application that discussed defects in the vent-hole cap and improvements that would be gained by redesigning the venting system. It charges that admitting those documents into evidence was a violation of A.R.S. § 12–686 which states in pertinent part:

In any product liability action, the following shall not be admissible *as direct evidence of a defect:*

2. Evidence of any change made in the design ... of ... the product ... subsequent to the time the product was first sold by the defendant (emphasis added).

By the explicit wording of this statute and Rule 407, Rules of Evidence, 17A A.R.S. which also deals with the admissibility of subsequent remedial measures, the documents were admissible if offered for a purpose other than "direct evidence of a defect." Here, the defectiveness of the cap had already been proven by Sevart's videotape and his testimony as well as the testimony of May. The documents were not offered redundantly; plaintiff wished, instead, to prove with them that Coleman's employees had a long-standing knowledge of the gas cap's dangerous characteristics, a matter that was material to the claim of punitive damages. Admitting the documents for that purpose was neither violative of A.R.S. § 12–686 nor of Rule 407.

The internal memorandum was not produced by Coleman in response to plaintiff's discovery. Plaintiff's attorney learned of it one week before trial through an anonymous tip. He was prohibited from relating that fact in court but was allowed to mention the disclosure date. Coleman attacks the judge's decision generally, and specifically alleges that plaintiff's actual references "prejudicially misused discovery dispute information." We have examined the record and find no abuse.

### d) Hearsay

■ Coleman's final evidentiary argument is that the court committed prejudicial error in allowing cross-examination from a deposition by Wilbur Townsend, a former technical research engineer for Coleman, that, to the best of his knowledge, Underwriters Laboratory had not and would not test any of Coleman's gasoline pressurized products because of their dangerousness. At trial he was asked:

"Do you know whether Underwriters Laboratory ever conducted any tests on any of the stoves manufactured by Coleman?"

He answered that they had. Use of his deposition to demonstrate the inconsistency was permissible under Rule 801(d)(1)(A), Rules of Evidence, 17A A.R.S. The statement by Underwriters Laboratory was admissible for the non-hearsay purpose of establishing Coleman's knowledge of the defect.

### Punitive Damages

■ Coleman asserts that the judge should not have let the issue of punitive damages go to the jury because it was not shown that defendant harbored the requisite, culpable mental state. Courts are in agreement that juries should not be permitted to award punitive damages unless a plaintiff has put on evidence showing defendant acted with wanton or reckless disregard for the safety of others. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974); *Ferguson v. Cessna Aircraft Co.*, 132 Ariz. 47, 643 P.2d 1017 (App.1981); D. Dobbs, Remedies § 3.9 (1973). However, any reasonable evidence of reckless disregard will carry that burden and create a jury question. *Torres v. North American Van Lines, Inc.*, 135 Ariz. 35, 658 P.2d 835 (App.1982).

Viewing the evidence in the light most favorable to the prevailing party, *Hallmark v. Allied Products Corporation*, 132 Ariz. 434, 646 P.2d 319 (App.1982), we must accept that Coleman knew, twenty years before this accident, that a stream of highly flammable white gas could be emitted through the vent hole of the stove's gas cap if that cap was unscrewed with the tank under pressure. Coleman could have reasonably anticipated that someone, sometime, would be burned by such a stream. Existence of the defect was known, the risk recognized, the injury foreseeable. Because the vented caps had been produced for some thirty years they were abundant; the likelihood of serious harm was substantial. Despite this knowledge, Coleman neither recalled the defective caps nor attempted to warn product users. The only remedial effort undertaken was to substitute a safer cap on subsequently manufactured stoves.

Given this record, defendant concedes that jury consideration of punitive damages would have been appropriate if the injury-producing stream of gas resulted from an unscrewing of the cap. It argues, however, that the risk of which they had notice —a shooting stream from a loosened cap— was so dissimilar to the circumstances of the litigated accident—a shooting stream from a cap purportedly tightened but acting like a loosened one—that it cannot fairly be said Coleman's failure to warn of the first risk was in reckless disregard of plaintiff's safety as to the second. We do not believe this a material dissimilarity.

Coleman had knowledge of the risk that occurred. Coleman knew of the accident-causing defect. What makes this case different from the one in which liability is unequivocal is the manner in which the defect caused the injury. We doubt that Coleman's disregard is made less reckless merely because it failed to anticipate the exact manner in which the defect caused the foreseeable accident to occur. See *Rossell v. Volkswagen of America*, 147 Ariz. 160, 709 P.2d 517 (1985).

Furthermore, we believe that plaintiff created a jury question on this issue that defendant failed successfully to rebut. Sevart's hypotheses were plausible and, because they were supported by testimony and evidence properly admitted, they rose from the possible to the probable, making it proper for the jury to consider them. See *Calhoun v. Honda Motor Company*, 738 F.2d 126 (6th Cir.1984) (causation is an element which may be proved by direct or circumstantial evidence. If a party seeks to establish causation by circumstantial evidence that evidence must be sufficient to tilt the balance from possibility to probability.) In reply, Coleman's experts did no more than label them "impossible." That categorical conclusion was not sufficient to divest the jury of their right to consider the

hypotheses, the fact that Coleman knew of the defects, and the egregious nature of Coleman's failure to warn in light of that knowledge.[1]

The jury verdicts are affirmed.

BIRDSALL and LACAGNINA, JJ., concur.

---

1. We agree with the following passage in *Stambaugh v. International Harvester Co.*, 106 Ill. App.3d 1, 19, 61 Ill.Dec. 88, 902, 435 N.E.2d 729, 743 (1982), reversed on other grounds, 102 Ill.2d 250, 80 Ill.Dec. 28, 464 N.E.2d 1011 (1984).

   "Although the experts seemed to agree that it was an 'impossibility' for a securely fastened triple-baffle cap to be blown off, they were nevertheless contradicted by several farmers who categorically stated that this 'impossibility' had in fact happened to them.... At the very least the evidence created a question for the jury to resolve."