IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 14 2011

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Appellee, | ) | 2 CA-CR 2009-0311 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| SCOTT ALLEN KING, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20081774

Honorable Edgar B. Acuña, Judge

AFFIRMED IN PART
VACATED AND REMANDED IN PART

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Robert A. Walsh                                      Phoenix
                                                                  Attorneys for Appellee


Emily L. Danies                                                              Tucson
                                                                  Attorney for Appellant

V Á S Q U E Z, Presiding Judge.

¶1        Appellant Scott King was convicted after a jury trial of negligent homicide, a dangerous-nature offense. The trial court sentenced him to an enhanced, mitigated,

four-year term of imprisonment.[1] On appeal, King argues the court erred in 1) admitting in-court and videotaped demonstration evidence; 2) instructing the jury on accomplice liability; and 3) denying his motion to dismiss the dangerous-nature allegation. For the reasons stated below, we affirm King's conviction but vacate the sentence and remand for resentencing.

## Factual and Procedural Background

¶2　　　　We view the facts in the light most favorable to upholding the jury's verdict. *See State v. Miles*, 211 Ariz. 475, ¶ 23, 123 P.3d 669, 675 (App. 2005). King was walking to a restaurant with his brother Adam, his cousin Michael M., and his half-brother Matt F. when they saw the victim, Steve G., and three other homeless men panhandling under the Interstate 10 and Craycroft Road overpass. Adam walked over to the men and told them they had to leave. Words were exchanged and Adam kicked Steve in his left side. When Steve attempted to defend himself, Adam responded by punching him in the face four or five times. King then ran to Steve and kicked him twice in the left side. After the altercation, King and the others went to the restaurant.

¶3　　　　Shortly thereafter, a police officer responded to a telephone call about the incident. Steve told the officer he was in pain and continuously held his left side; he

---

[1]With respect to the enhancement of the sentence, the trial court relied on former A.R.S. § 13-604, which was in effect at the time King committed the offense. However, the Arizona criminal sentencing code has been renumbered, effective "from and after December 31, 2008." *See* 2008 Ariz. Sess. Laws, ch. 301, §§ 1-120. For ease of reference and because the renumbering included no substantive changes, *see id.* § 119, we refer in this decision to the current section numbers rather than those in effect at the time of the offense in this case.

walked with a limp and had to lean against the officer's car to support himself. The officer then spoke with King and the others at the restaurant and told them the victim did not want to press charges.

¶4        Three days later, Steve was found dead outside his tent. An autopsy revealed that the cause of his death was blunt force trauma. The bottom five ribs on his left side had been fractured, and his spleen had been ruptured by at least one of the ribs, which caused his abdominal cavity to fill with blood. During a videotaped police interview, Michael M. was asked to describe and then demonstrate the force King had used when he kicked the victim, using a chair to represent Steve's body.

¶5        King and his brother Adam were charged by indictment with second-degree murder, a class one felony. The state also gave notice of its intent to seek lesser-included instructions and verdict forms on manslaughter and negligent homicide, alleging the offenses were of a dangerous nature. A jury found King guilty of negligent homicide and found the offense to be of a dangerous nature. The trial court sentenced him as described above. This timely appeal followed.

### Discussion

### I. Courtroom and Video-Taped Demonstrations

¶6        King first argues the trial court erred in "allowing a courtroom demonstration of [the] purported force used by [King] with a witness kicking a chair." At trial, Michael M. testified about the altercation between King and Steve. After Michael acknowledged he had told the detective that King had kicked Steve "really hard," he was asked to use a chair to demonstrate for the jury the force used by King when he had

3

kicked Steve. The state then played the videotaped demonstration from Michael's police interview, without sound. King objected to both demonstrations, asserting it was "impossible for the witness to replicate" the force "used on th[e] day in question." The court overruled the objection, stating that the demonstration was "fair examination" of an eyewitness to the incident and that King would have the opportunity to cross-examine Michael and impeach the demonstration evidence.

¶7 On appeal, King contends there was insufficient foundation for the courtroom demonstration,[2] and the "videotape statement was impermissible hearsay."[3] We review a trial court's evidentiary decisions for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, ¶ 122, 207 P.3d 604, 626 (2009). In general, "demonstrative evidence is relevant if it illustrates or explains testimony and will be admitted if its probative value outweighs the danger of unfair prejudice." *State v. Luzanilla*, 176 Ariz. 397, 405, 861 P.2d 682, 690 (App. 1993), *vacated in part on other grounds by* 179 Ariz. 391, 880 P.2d

---

[2]It is unclear from King's brief whether he is arguing Rule 901, Ariz. R. Evid., applies to both the videotape and the in-court demonstration, or just to the in-court demonstration; in our discretion we consider both, because he raised the objection to both in the trial court.

[3]King does not develop his argument that the videotape is hearsay, or cite any authority to support it and so it is waived. *See State v. Moody*, 208 Ariz. 424, n.9, 94 P.3d 1119, 1147 n.9 (2004). In any event, the record is silent as to whether the videotape was admitted as substantive evidence or to impeach Michael's in-court demonstration. Because the record is silent, we presume the videotape was admitted here to impeach Michael. *See State v. Lavers*, 168 Ariz. 376, 399, 814 P.2d 333, 356 (1991) (where record incomplete, we assume any evidence not available on appeal supports trial court's actions). And it is King's burden to establish the videotape was admitted not for impeachment but as substantive evidence of guilt. *See State v. Rivera*, 168 Ariz. 102, 103, 811 P.2d 354, 355 (App. 1990) (defendant has duty to prepare record so appellate court can pass upon questions sought to be raised on appeal).

4

611 (1994). "[T]he conditions of a demonstration must be similar to those being duplicated in order for the demonstration to be admissible." *State v. Mincey*, 130 Ariz. 389, 408, 636 P.2d 637, 656 (1981). "However, when the experiment is not a purported replication but is more in the nature of a demonstration, it is appropriately admitted if it fairly illustrates a disputed trait or characteristic." *Volz v. Coleman Co.*, 155 Ariz. 563, 565, 748 P.2d 1187, 1189 (App. 1986), *reversed in part on other grounds by* 155 Ariz. 567, 748 P.2d 1191 (1987). "This is a determination which, absent abuse, is left to the discretion of the trial court." *Mincey*, 130 Ariz. at 408, 636 P.2d at 656.

¶8 King contends the trial court erred in admitting the courtroom and videotaped demonstrations because they were not properly authenticated pursuant to Rule 901, Ariz. R. Evid. He asserts that "kicking an empty chair in a courtroom, or kicking an empty chair in a police station where it hit the wall, does not authentically demonstrate either what [Michael M.] saw [King] do, nor the 'force' of a kick [Michael M.] may have seen [King] inflict on [Steve]." King also asserts the demonstration did not accurately show "the place on [Steve's] body where the kick may have landed."

¶9 Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The trial court "does not determine whether the evidence is authentic, but only whether evidence exists from which the jury could reasonably conclude that it is authentic." *State v.*

*Lavers*, 168 Ariz. 376, 386, 814 P.2d 333, 343 (1991). "[A] flexible approach is appropriate, allowing a trial court to consider the unique facts and circumstances in each case—and the purpose for which the evidence is being offered—in deciding whether the evidence has been properly authenticated." *State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 14, 186 P.3d 33, 37 (App. 2008).

¶10 Here, the demonstration evidence was offered by the state to show the force King had used when he kicked Steve; it was not offered to "replicate" the actual assault. Michael M. acknowledged he was an eyewitness to the altercation and he had seen King kick Steve in the side. And, when he was asked to describe the force King had used, Michael M. stated that it was "really hard." He also stated that he had viewed the videotape before testifying and verified it was the tape of his demonstration for the police. As to both demonstrations, when Michael M. was asked to show the force King had used, presumably he did so. *See* Ariz. R. Crim. P. 901(b)(1) (testimony of witness with knowledge that matter is what it is claimed to be satisfies foundation requirements under Rule 901). And, the trial court properly concluded that whether the demonstrations accurately showed the force King had used was a "factual determination for the jury . . . ." *See State v. Williams*, 209 Ariz. 228, ¶ 6, 99 P.3d 43, 46 (App. 2004) (weighing of evidence is role for jury). Thus, the trial court did not err on this basis in allowing the demonstrations to be presented.

¶11 Citing Rule 403, Ariz. R. Evid., King next argues the evidence was not relevant and, even if it was relevant, "that the prejudicial effect of a jury watching someone kicking a chair . . . far outweighed any probative value of the demonstration."

However, he neither develops this argument nor presents additional authority to support this claim on appeal. "[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim." *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). The argument is without merit in any event.

¶12 As the trial court pointed out, given the difficulty of describing in words what he had seen, Michael M.'s demonstration was probative because he was an eyewitness to the altercation. Evidence generally is admissible if it is relevant. Ariz. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401. Here, the demonstrations related to whether the force of the kicks was sufficient to cause or contribute to Steve's fatal injuries and, thus, they were relevant. And because the jury heard testimony that King ran at Steve and kicked him "really hard," as well as expert testimony that such a kick could have caused the fatal injury, any prejudicial impact of the demonstration evidence was cumulative to other properly admitted evidence. Furthermore, the court took reasonable measures to reduce the potential unfair prejudice of the videotape by muting the sound.

¶13 Contrary to King's additional argument, nothing in *State v. Mincey*, 130 Ariz. 389, 636 P.2d 637 (1981) suggests Michael M.'s demonstration was inadmissible because he was not an expert. Rule 701, Ariz. R. Evid., provides that when the witness is not testifying as an expert, "testimony in the form of opinions or inferences [is admissible

7

if] those opinions or inferences . . . are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *See State v. Miller*, No. 2 CA-SA 2010-0058, 2010 WL 5186624 (Ariz. Ct. App. Dec. 13, 2010) (interpreter's proffered identification testimony based on familiarity with recorded voices rather than expertise as translator admissible as non-expert testimony under Rule 701). Michael was an eyewitness to the altercation and neither gave an opinion nor testified as an expert. The trial court determined that the demonstrations were admissible, given that Michael was only demonstrating the force of the kick, not its effect. We cannot say the court abused its discretion in making this determination.

## II. Accomplice Liability

¶14        King next contends the trial court erred in denying his motion to preclude the state's reliance on accomplice liability and by instructing the jury on that theory of guilt. Although conceding he "may have had the intent to commit simple assault," King argues that because he acted without intent to cause serious physical injury or death, he lacked the intent required to be found guilty as an accomplice. We review a trial court's decision to give a jury instruction on accomplice liability for an abuse of discretion. *See State v. Hurley*, 197 Ariz. 400, ¶ 9, 4 P.3d 455, 457 (App. 2000).

¶15        In denying King's motion to preclude, the trial court stated:

> The point is that [King] went, after all that happened, and kicked [Steve] one time after his brother did . . . . It doesn't have to be a plan or an agreement or a conversation.

8

> [He] was aiding his brother in assaulting [Steve] for the purpose of getting him out of there or . . . self-defense [or] whatever other purpose, but he knew his brother was doing this. . . . Aiding in the commission of the crime in the context that it is being done is sufficient for accomplice liability.

¶16 A person is criminally accountable as an accomplice if, "with the intent to promote or facilitate the commission of an offense," the person solicits, aids, or "[p]rovides means or opportunity to another person to commit the offense." A.R.S. § 13-301. Thus, "[t]he state may base a defendant's criminal liability for a substantive criminal offense on an accomplice theory if the state is able to show the defendant aided or facilitated the commission of that offense by a principal." *State v. Korovkin*, 202 Ariz. 493, ¶ 12, 47 P.3d 1131, 1135 (App. 2002), *citing* A.R.S. §§ 13-301, 13-303.

¶17 King argues he could not be convicted as an accomplice because he did not intend to "facilitate or promote" either serious injury or death. However, § 13-303(B)(2) further provides that

> [i]f causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense if . . . [t]he person aids, counsels, agrees to aid or attempts to aid another person in . . . engaging in the conduct causing such result.

The offense of negligent homicide includes the element of "caus[ing] the death of another person." A.R.S. § 13-1102(A). Thus the state was not required to prove that King had intended Steve's death. It needed only to establish that King, acting with the culpable mental state of negligence, aided in the same attack that ultimately resulted in death. The

9

state provided ample evidence that King's and his brother's conduct amounted to a single criminal episode.

**¶18** King further contends the theory of accomplice liability cannot apply to negligent homicide. Although he acknowledges that in *State v. Nelson*, 214 Ariz. 196, ¶ 1, 150 P.3d 769, 769 (App. 2007), this court held that a person "may be convicted as an accomplice to a negligent homicide," he contends that decision is "illogical and the facts of this case do not comport with the ruling" in any event. But King provides no argument or authority to support his contention that the court's reasoning in *Nelson* was unsound and we see no reason to depart from its reasoning here. Moreover, we disagree with his suggestion that *Nelson* is distinguishable.

**¶19** In *Nelson*, the defendant and a friend decided to assault the victim at a party because they were "tired of [him] pushing everybody around." 214 Ariz. 196, ¶ 3, 150 P.3d at 770. The defendant punched the victim in the temple, knocking him unconscious, then hit him in the face and head about twenty more times, finishing with a blow to the chest. *Id.* His friend then "'chin-checked'" the victim three to five times. *Id.* The victim died later that morning from blunt force injuries to the head and chest. *Id.* ¶ 4. The defendant was charged with one count of second-degree murder, and the trial court gave the jury an accomplice liability instruction because it was uncertain who actually had killed the victim. *Id.* ¶ 5. The defendant ultimately was convicted of negligent homicide. *Id.* ¶ 6. This court concluded that, under these circumstances, the defendant could be convicted as an accomplice to an offense "with a culpable mental state of criminal negligence." *Id.* ¶ 19.

¶20 King argues *Nelson* is distinguishable because there, "the accomplices both verbally abused the victim, and the men held the victim down together." King asserts that because he assaulted Steve after Adam had completed his assault, and because King did not say anything, make any plans, or facilitate Adam's actions, he cannot be Adam's accomplice, unlike the defendant in *Nelson*. But as we have already stated, § 13-303(b)(2) requires only that the accomplice "aid[], . . . agree[] to aid or attempt[] to aid another person" in the conduct that causes the required result. The statute does not require planning or discussion. Nor does it require direct facilitation of the principal's actions, or actions contemporaneous with those of the principal. And the state presented sufficient evidence that King had participated in the same attack that ultimately resulted in Steve's death. The trial court thus did not err in denying King's motion to preclude the state from using the theory of accomplice liability and instructing the jury accordingly.

## III. Dangerous-Nature Allegation

¶21 Finally, King contends the trial court erred in denying his motion to dismiss the dangerous-nature allegation and, as a result of that error, should have granted him a new trial. He cites *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989), for the proposition that a person's feet cannot be dangerous instruments. And, he appears to be arguing that, as a matter of law, "soft tennis shoes . . . are not readily capable of causing death or serious physical injury," thus, they should be viewed no differently than the feet on which they are being worn. He also seems to be challenging the sufficiency of the evidence to support the finding that the offense was of a dangerous nature even assuming a tennis shoe can be considered a dangerous instrument.

11

¶22     Before trial, the state filed a notice of its intent to allege the offense had been committed with "the use or exhibition of [a] dangerous instrument to wit: feet." King filed a motion to dismiss the allegation. At a hearing on the motion, the state clarified that it meant a "shod foot," the foot wearing the tennis shoe. In denying King's motion, the trial court found that the question whether a tennis shoe constitutes a dangerous instrument was "a fact question for the jury to decide." However, neither the indictment nor the verdict forms were ever amended to reflect that the dangerous instrument was the tennis shoe. The jury ultimately found that the offense was of a dangerous nature because it involved the use of a dangerous instrument, "to wit: feet." After trial, King reurged the argument in a motion for new trial, which the court denied.

¶23     Section 13-701(D)(2), A.R.S., provides that the "[u]se, threatened use or possession of a . . . dangerous instrument during the commission of the crime" may be considered an aggravating circumstance when determining a defendant's sentence. A dangerous instrument is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12). Generally, "'[i]f an instrument is not inherently dangerous as a matter of law, like a gun or knife, the jury can determine whether the defendant used the object in such a way that it became a' . . . dangerous instrument." *State v. Schaffer*, 202 Ariz. 592, ¶ 9, 48 P.3d 1202, 1205 (App. 2002), *quoting Gordon*, 161 Ariz. at 310, 778 P.2d at 1206.

¶24     In *Gordon*, our supreme court addressed the question whether as a matter of law a body part alone could be a dangerous instrument and whether the question should

12

have been submitted to the jury. And, because the court's determination involved statutory interpretation, it conducted a de novo review of that issue. *Gordon*, 161 Ariz. at 311, 778 P.2d at 1207. Thus, in this case, we review de novo whether as a matter of law, a tennis shoe cannot be a dangerous instrument.

¶25 In *Gordon*, the defendant hit the victim several times with his fists before sexually assaulting her. 161 Ariz. at 309, 778 P.2d at 1205. The trial court enhanced Gordon's sentences after finding his fists were dangerous instruments. *Id.* at 309-10, 778 P.2d at 1205-06. Our supreme court reversed, concluding fists cannot be dangerous instruments. *Id.* at 311, 778 P.2d at 1207. The court stated that because the statute also allowed enhancement for serious bodily injury, no purpose existed to allow the jury to conclude that body parts are dangerous instruments and doing so could result in an undefined standard for dangerous nature crimes—"a not so serious physical injury enhancement test." It further reasoned that to conclude fists are dangerous instruments ultimately would lead to a holding that any body part could be a dangerous instrument, which would "confuse[] the essential elements of several crimes." *Id.* King thus is generally correct that his foot could not have been considered a dangerous instrument.

¶26 However, the question remains whether the tennis shoe he had been wearing while committing the offense could not, as a matter of law, be a dangerous instrument. We recognize that depending on the circumstances of their use, most objects and household items can constitute dangerous instruments. *See State v. Befford*, 148 Ariz. 508, 510, 715 P.2d 761, 763 (1986). However, *Gordon*'s concerns over the possibility of "confus[ing] the essential elements of several crimes," or of leading to the

13

ultimate conclusion that all body parts could constitute dangerous instruments remain valid when an object is an article of clothing or shoes being worn, not wielded. *See Gordon*, 161 Ariz. at 311, 778 P.2d at 1207.

¶27 Although we have found no Arizona cases that have addressed this issue, we observe that courts in other jurisdictions have concluded that tennis shoes can be dangerous instruments when they are worn during an assault. *See, e.g.*, *United States v. Steele*, 550 F.3d 693, 699 (8th Cir. 2008) (question of fact for jury whether tennis shoes worn by defendant as he kicked victim in torso can be dangerous weapon); *Arthur v. United States*, 602 A.2d 174, 178-79 (D.C. 1992) (tennis shoes can be dangerous weapon; no need to prove injury worse than if defendant kicked victim with bare foot); *State v. Pamilton*, 979 So. 2d 648, 654 (La. App. 2008) (tennis shoes have been found to be dangerous instruments); *Com. v. Tevlin*, 741 N.E.2d 827, 832-33 (Mass. 2001) (question for finder of fact whether sneakers constitute dangerous weapon as used); *People v. Lev*, 822 N.Y.S.2d 73, 73 (App. Div. 2006) (tennis shoe used to kick victim in midsection with significant force can constitute dangerous instrument).

¶28 However, we conclude *Gordon* requires more than a mere finding that the defendant was wearing tennis shoes when he kicked the victim. For a jury to find that a shoe is a dangerous instrument, the state must prove either that the shoe caused greater or different injuries than would have been caused by a bare foot, or that the shoe had been wielded as a weapon. In this case, the state proved neither. In particular, it presented no evidence that the victim's injuries were more serious because King was wearing tennis

14

shoes. Thus, under *Gordon*, it was error for the trial court to instruct the jury on the dangerous-nature offense.

¶29 Moreover, because the instructions and verdict forms never were amended to reflect that the dangerous-nature allegation referred to a tennis shoe, we cannot say the jury ever considered whether the state had proven either that King used the shoe as a weapon or that he inflicted greater injuries because he was wearing shoes, or whether it would have reached a different decision had it done so. Therefore we cannot say the error here was harmless. *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (error harmless only when we can say beyond reasonable doubt that error did not contribute to or affect verdict).

### Disposition

¶30 For the reasons stated above, we affirm King's conviction for negligent homicide, but because the dangerous-nature allegation was neither alleged properly nor supported by the evidence, we vacate the sentence and remand for further proceedings consistent with this decision.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

15