NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

ELENA NOGUERO, *Plaintiff/Appellant,*


*v.*


AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
*Defendant/Appellee.*

No. 1 CA-CV 15-0364
FILED 10-20-2016

_____

Appeal from the Superior Court in Maricopa County
No.  CV2011-080366
The Honorable David M. Talamante, Judge

**AFFIRMED**

_____

COUNSEL

Mayes Telles PLLC, Phoenix
By J. Blake Mayes
*Counsel for Plaintiff/Appellant Pro Bono*

Tyson & Mendes LLP, Phoenix
By Lynn M. Allen, J.P. Harrington Bisceglia
*Counsel for Defendant/Appellee*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Donn Kessler joined.

_____

**H O W E**, Judge:

¶1  Elena Noguero appeals several of the trial court's evidentiary rulings during her jury trial against American Family Mutual Insurance Company ("American Family"). Noguero also appeals the trial court's denial of her motion for judgment notwithstanding the verdict. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2  After a 2008 monsoon, Noguero made a claim with American Family, her homeowner's insurance carrier, for water damage caused by water coming through the windows. An American Family adjuster inspected the home and found some water damage to areas of drywall but concluded that neither the windows nor the roof had storm-related damage. Thus, the adjuster determined that because the damages to Noguero's home were not related to the storm, her insurance policy did not cover them. However, Noguero continued to report and file claims for water damage in her home over the next couple of years, but after each subsequent re-inspection American Family concluded that the damage was not storm-related and denied Noguero's claims. In 2010, Noguero filed a separate claim for damages relating to a hail storm.

¶3  In 2011, Noguero sued American Family for breach of contract and breach of the covenant of good faith and fair dealing, alleging that American Family did not fully pay or properly adjust her claims relating to the 2008 and 2010 storms and caused delay in the repair of her home. Noguero also alleged that as a result of the consistent water damage, her home began to grow mold. Noguero sought actual and punitive damages, declarative relief, and attorneys' fees.

¶4  After two years' of discovery and pre-trial motions, the trial court granted the parties' joint scheduling order in August 2013. The order stipulated that the deadline for all non-expert disclosures would be September 10, 2013, and the deadline for all discovery would be November

22, 2013. On November 21, 2013, Noguero disclosed her neighbor as a non-expert witness who would testify regarding her observations of Noguero's home before and after the storms and the measures she helped Noguero take to attempt to save Noguero's home-based pet accessory business. American Family did not immediately object to the disclosure, but the following month moved for summary judgment regarding the breach claims and damages. The trial court ordered that neither party make further discovery motions until it could rule on American Family's motion for summary judgment. In April 2014, the trial court granted that motion in part relating to damages.

¶5          Noguero then moved for relief from the trial court's partial grant of summary judgment, arguing that the trial court made errors of law and fact in making its ruling. At a subsequent pre-trial conference one week before the October 2014 trial, the trial court stated that it was "inclined to grant the Plaintiff's Motion," but could not rule on it until American Family had an opportunity to respond. American Family accordingly responded to the motion. American Family also moved to strike Noguero's November 21 disclosure as untimely and to preclude Noguero's neighbor from testifying. The trial court granted American Family's motion and precluded the neighbor from testifying.

¶6          During trial, Noguero testified that she ran a small pet accessory business out of her home, but despite her efforts, she lost roughly $1 million in inventory because of the water-damaged and moldy condition of her home. She also stated that because of the mold, she eventually felt forced to move out of her home for health reasons. Noguero testified that she rented an apartment and then a house, and moved to admit copies of her residential leases into evidence as additional expenses she incurred. American Family objected on hearsay grounds, which the trial court sustained.

¶7          At the end of Noguero's direct testimony, a juror asked her if her neighbors' homes experienced similar leaking through the roofs or windows after the 2008 and 2010 storms, and if so, whether the neighbors' homes were the same model as hers. American Family objected, arguing that although Noguero could testify about what her observations of her neighbors' homes after the storms were, the specific damages, repairs, and other related information constituted inadmissible hearsay that Noguero lacked the requisite foundation to provide. The trial court sustained the objection, however, finding the question irrelevant.

¶8            In presenting its defense, American Family called an industrial hygienist to testify. The hygienist stated that he had gone to Noguero's home in connection with the lawsuit to observe a "destructive test." He related that while there, he noted stains around one window's corners in the family room. When asked if he drew a conclusion regarding the causation of the water damage around a family room window Noguero objected for lack of foundation, arguing that the hygienist could not answer the question because he was not an engineer. Noguero also objected to the hygienist's testimony regarding causation of water damage, arguing that American Family had disclosed another expert to provide that testimony. The trial court sustained the objection only for lack of foundation, ruling that the witness could testify regarding what leaks he observed but not opine on the cause of the leaks. The hygienist testified that the staining on Noguero's wall was consistent with leaks coming from the windows' corners. Noguero did not object to this testimony. The hygienist then continued to discuss potential defects in the windows, but the trial court interrupted him and reminded the jury that it had limited the hygienist's testimony to his observations and not his opinions on causation.

¶9            Later, after excusing the jury for the day, the trial court explained its ruling to the parties. The trial court stated that although it believed that American Family had sufficiently disclosed the hygienist, he was not a causation expert and thus lacked foundation to make any conclusions to that effect. The trial court further stated that it reduced the hygienist's testimony essentially to that of a lay witness to not violate the independent expert rule, as American Family had retained an expert witness to testify on causation matters. Noguero maintained that the hygienist's testimony that he observed that the staining on her walls was consistent with leaks from the windows' corners was a "roundabout" way of testifying regarding the causation of the leaks.

¶10           American Family also called one of its property claim managers to testify. The manager testified that, as part of his job, he reviews the claims adjuster's files to ensure that the claims are properly handled and approves denial letters sent to insureds. The manager testified that he became involved with Noguero's case in April 2010. He stated that he sent contractors to inspect and re-inspect Noguero's home after she continued to complain of water damage, but that each inspection concluded that the damage was not storm-related. Absent storm damage, the manager denied Noguero's homeowner's insurance claim.

¶11           American Family asked what his evaluation of the condition of Noguero's home was after seeing the photographs from the multiple

inspections; the manager responded that he believed the condition of the home was inconsistent with storm damage. After laying foundation about the manager's experience with handling storm damage claims, American Family asked if, upon looking at those photographs, he believed that the condition of Noguero's home was "indicative of monsoon microburst-type events." Noguero objected, arguing that because the manager was not an expert witness, he could not opine about the effects of certain weather conditions. The trial court sustained the objection, stating that the manager could testify about his claim decision and upon what information he relied to make that decision, but not whether storm damage actually existed. Subsequently, American Family asked the manager what his own conclusion was relating to Noguero's claim after receiving the re-inspection report and photographs. The manager responded that he decided, based on the information, that no storm damage to the roof existed and that he communicated his decision denying the claim to Noguero.

¶12 American Family also asked whether he believed that the claims adjuster reasonably investigated the cause of loss. Noguero objected for lack of foundation and the trial court sustained the objection. American Family then asked the manager if he believed that the claim had been handled reasonably. Noguero again objected, but the trial court permitted the manager to answer. The manager stated that he believed the investigation, coverage decisions, and evaluation of the claim were appropriate and fair.

¶13 Additionally, American Family retained and presented testimony from a construction expert. The expert opined that, upon reviewing photographs of the home and various depositions from contractors who inspected the home, the roof could not be a source of water intrusion. He testified that his assistant took the photographs he relied on and that he never actually went to inspect the house. He stated, however, that relying upon notes from others' inspections is a common practice in his industry. He had given his assistant certain instructions to assess the interior and exterior of the house, look at its conditions, and document his findings with photographs. The expert also collaborated with his assistant in preparing the report. American Family moved to admit the expert's report and the attached photographs. Noguero objected to the admission of the photographs for lack of foundation. Without ruling on the objection, the trial court allowed Noguero to *voir dire* the expert. Noguero, however, did not ask any foundation questions about the photographs during that time. Noguero then renewed her objection to the admission of the photographs, but the trial court overruled it explaining that it was admitting the

photographs only because the construction expert relied on them in rendering his opinion.

¶14        The jury ultimately found in American Family's favor on all counts. The week following the trial court's entry of judgment, Noguero filed a "Motion for Judgment Notwithstanding the Verdict,"[1] arguing that the verdict was contrary to the weight of the evidence presented at trial. Although the motion mentioned Arizona Rule of Civil Procedure 59 regarding new trials, it cited as the appropriate standard of review one for motions for judgment as a matter of law. Noguero requested that the trial court "set aside the verdict," "direct a verdict for Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing," and "grant a new trial for damages only." American Family opposed the motion, citing Arizona Rule of Civil Procedure 50 regarding motions for judgment as a matter of law and arguing that because Noguero failed to move for a judgment as a matter of law before the trial court submitted the case to the jury, she could not make such a motion after the verdict. Noguero did not reply. The trial court denied the motion. Noguero timely appealed.

## DISCUSSION

### 1.  Evidentiary Ruling Before Trial

¶15        Noguero argues that the trial court made several erroneous evidentiary rulings throughout the litigation. The trial court has considerable discretion in ruling on the admission of evidence, *Brown v. U.S. Fidelity and Guar. Co.*, 194 Ariz. 85, 90 ¶ 25, 977 P.2d 807, 812 (App. 1998), and absent an abuse of that discretion and resulting prejudice, we will not disturb the trial court's ruling, *Jaynes v. McConnell*, 238 Ariz. 211, 216 ¶ 15, 358 P.3d 632, 637 (App. 2015). An abuse of discretion is "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Woody*, 173 Ariz. 561, 563, 845 P.2d 487, 489 (App. 1992). The trial court did not abuse its discretion in any of its evidentiary rulings.

¶16        Noguero first argues that the trial court abused its discretion by granting American Family's motion to preclude her neighbor from testifying about the condition of Noguero's home before and after the storm and about the efforts Noguero took to try to save her business. Noguero

---

[1]        Pursuant to the language of Arizona Rule of Civil Procedure 50, we refer to this motion as a "judgment as a matter of law."

argues that although she disclosed her neighbor two months after the November 21, 2013, non-expert disclosure deadline, the trial court might have permitted the neighbor to testify if American Family had not "lied in wait" to object until roughly one week before the October 2014 trial. The trial court did not abuse its discretion.

¶17        As relevant here, Arizona Rule of Civil Procedure 26.1(a) requires that a party seeking to use information at trial seek leave of court to extend the time for disclosure as provided in Rule 37(c)(2) if that party disclosed the information after the deadline set in a scheduling order or, in the absence of such a deadline, 60 days before trial. Rule 37(c)(2) precludes the use of untimely disclosed information unless the trial court finds that the party's failure to timely disclose the information was harmless or for good cause, and that the disclosing party disclosed the information as soon as practicable after its discovery. In determining whether good cause exists for untimely disclosures, the trial court may consider a number of factors including (1) the willfulness or inadvertence of the party's conduct, (2) prejudice to either side that may result from excluding or allowing the evidence, (3) opposing counsel's action or inaction in attempting to resolve the dispute, and (4) the overall diligence with which the case has been litigated. *Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 288, 896 P.2d 254, 258 (1995).

¶18        Here, the trial court did not abuse its wide discretion over discovery matters in precluding Noguero's neighbor from testifying because Noguero did not timely disclose her. The trial court issued a scheduling order that set a September 10, 2013, non-expert disclosure deadline. Noguero did not disclose her neighbor as a witness until two months later. Despite the untimely disclosure, Noguero did not seek leave of court to extend the time for disclosure as required to use her neighbor's testimony during trial. Further, Noguero failed to establish that good cause existed for the untimely disclosure. *See Zimmerman v. Shakman*, 204 Ariz. 231, 236 ¶ 16, 62 P.3d 976, 981 (App. 2003) (stating that the trial court possesses considerable latitude in determining whether a party has shown good cause for a late disclosure and concluding that when no good cause exists, "barring the introduction of evidence not previously disclosed may be a reasonable sanction"). Finally, the trial court's exclusion of the neighbor's testimony did not prejudice Noguero because Noguero herself testified on the matters relating to the condition of her home and the efforts she took in trying to keep her business. Thus, the trial court did not abuse its discretion in precluding Noguero's neighbor from testifying.

### 2. Evidentiary Rulings During Trial

**¶19** Noguero also argues that the trial court made numerous erroneous evidentiary rulings during trial. First, Noguero argues that the trial court abused its discretion by admitting photographs of her home during the construction expert's testimony because the expert neither took the photos nor visited Noguero's home. To be admissible, photographs must be a reasonable and faithful representation of the object depicted and must assist the jury in understanding the testimony. *Lohmeier v. Hammer*, 214 Ariz. 57, 61 ¶ 8, 148 P.3d 101, 105 (App. 2006). But the person who took the photographs need not be the one to verify the photographs at trial, nor does the verifying witness need to have been present when the photographs were taken as long as the witness can attest that the photographs accurately portray the scene depicted. *Id.* Additionally, Arizona Rule of Evidence 703 permits expert witnesses to base their opinions on facts or data the expert was made aware of, and further allows the disclosure of those facts or data to the jury if the probative value in helping the jury evaluate the expert's opinion substantially outweighs its prejudicial effect. This rule permits the admissibility of otherwise non-admissible evidence for the "limited purpose of disclosing the basis for the opinion." Ariz. R. Evid. 703 cmt.

**¶20** The trial court did not abuse its discretion by admitting the photographs here because the construction expert provided sufficient foundation and he relied on them in forming his opinion. Although the expert did not take the photographs and was not present when the photographs were taken, the expert nonetheless provided enough information from which the jury could reasonably conclude that the photographs were authentic. He testified that he sent his assistant to Noguero's house to conduct the inspection with instructions to assess the interior and exterior of the house and document his findings with photographs. The construction expert also testified that he worked with the same assistant in reviewing the photographs and preparing the subsequent report based on those photographs. From this testimony, and the lack of any challenge to their authenticity, a jury could reasonably conclude that the photographs were authentic. *See* Ariz. R. Evid. 901(a) (providing that the required authenticating of evidence is satisfied if the proponent produces sufficient evidence to support a finding that the item is what the proponent claims it is); *see also State v. King*, 226 Ariz. 253, 257 ¶ 9, 245 P.3d 938, 942 (App. 2011). Thus, sufficient foundation supported the admission of the photographs.

**¶21** The photographs are also admissible under Rule 703 because the construction expert testified that he relied on the photographs in

reaching his opinion. In fact, the photographs, although admitted as their own exhibit, were originally part of the construction expert's written report. The trial court informed the jury that it admitted the photographs solely because the construction expert relied on them in rendering his opinion. This clarification sufficiently instructed the jury of the limited purpose of the photographs' disclosure pursuant to Rule 703. *See State v. Baltzell*, 175 Ariz. 437, 441, 857 P.2d 1291, 1295 (App. 1992) (affirming the trial court's admission of photographs "as demonstrating and explaining the basis of the investigator's opinion"). Accordingly, the trial court did not abuse its discretion.

¶22        Second, Noguero argues that the trial court erred by allowing the hygienist and the manager to testify about ultimate causation issues even though they were not expert witnesses, and that their testimony was therefore duplicative in violation of Arizona Rule of Civil Procedure 26(4)(D). Lay witnesses may give an opinion, even to the ultimate issue, when the opinion is rationally based on the witness' perception and is helpful to clearly understanding the witness' testimony or to determine a fact in issue. Ariz. R. Evid. 701. Here, the hygienist testified that, rationally based on his perception, he believed that the staining on Noguero's wall was consistent with leaks from the corners of her windows. He did not testify that the water damage to Noguero's house was caused only by window leaks. He also did not testify about how much water could have come in through those leaks or to what extent, if any, the water that stained the walls damaged the house. *See Rimondi v. Briggs*, 124 Ariz. 561, 564, 606 P.2d 412, 415 (1980) (concluding that the witness did not provide expert testimony because he related his observations but did not testify on what actually caused the accident). To the extent that the hygienist attempted to or began to give an opinion, the trial court interrupted the testimony and precluded the hygienist from making them. Thus, the hygienist's testimony did not constitute expert testimony for which special foundation was required.

¶23        Similarly, the trial court did not err in allowing the manager's testimony. As a claims manager he is responsible for making claims decisions accepting or denying an insured's claim. To the extent that the manager offered an opinion about whether the photographs he relied on represented damage consistent with what "microburst-type events" may cause, the trial court sustained Noguero's objection and held that the opinion stretched beyond the scope of his testimony. The manager testified that in making the decision to deny Noguero's claim after the 2010 storm, he relied on an inspection report and photographs. He stated that, based on that information, he reached his own conclusion that Noguero's home did

not suffer storm damage and accordingly was not covered by the homeowner's insurance policy. Noguero did not object to this subsequent question or response at trial. *See* Ariz. R. Evid. 103(a)(1) (providing that an objecting party must timely make the objection and state the specific grounds for it to preserve the claim for appeal). Because neither the hygienist's nor the manager's testimonies were expert testimonies on the ultimate causation issue, they did not violate Rule 26(4)(D) against duplicative expert testimony. Thus, the trial court did not abuse its discretion.

¶24        Noguero next argues that the trial court erroneously overruled her objection for lack of foundation, permitting the manager to testify that he believed American Family reasonably handled her claim. But the trial court did not abuse its discretion in permitting the testimony. The manager's position as a claims manager requires him to oversee the claims adjusters working under him and to review their files to make sure the claims are properly addressed. He also takes that into consideration when approving denial letters sent to insureds. Thus, the trial court did not abuse its discretion by allowing the manager to testify whether, based on his review of Noguero's claim, the claim was reasonably or properly handled.

¶25        Additionally, Noguero argues that the trial court abused its discretion by finding the juror question regarding reports of storm damage to her neighbors' homes irrelevant and not allowing her to answer. Evidence is relevant if (1) it has a tendency to make a fact more or less probable than it would be without the evidence and (2) the fact is of consequence in determining the action. Ariz. R. Evid. 401. The trial court properly ruled that reports of storm damage to other homes was irrelevant to whether her home suffered damage and what that damage was. Here, the issues at trial related to damages that Noguero's home suffered and if American Family, as the homeowner's insurance provider, breached its contract by failing to cover those damages pursuant to Noguero's insurance policy. That Noguero's neighbors reported roof or window leaks into their own homes after either storm would not have a tendency to make more or less probable that Noguero's house suffered damage or that American Family failed to properly adjust Noguero's homeowner's insurance claim. Such information would only help show that a storm passed through the neighborhood—an issue neither party disputes. Similarly, if Noguero's neighbors reported roof or window leaks is not of consequence in determining those matters, and Noguero did not make an offer of proof claiming otherwise. Even if the testimony would have been relevant, it nevertheless would have been inadmissible because Noguero lacked foundation to testify about the extent and cause of damage to her neighbor's

homes. *See John Munic Ents., Inc. v. Laos*, 235 Ariz. 12, 17 ¶ 13, 326 P.3d 279, 284 (App. 2014). Thus, the trial court did not abuse its discretion.

¶26        Last, Noguero argues that the trial court erred by sustaining American Family's hearsay objection to the admission of Noguero's residential lease agreements entered into after she moved out of her home. Hearsay is inadmissible at trial unless it meets an enumerated exception. Ariz. R. Evid. 803–804. Evidence constitutes inadmissible hearsay if it is an assertion that the declarant does not make while testifying at the current trial and is offered to prove the truth of the matter asserted. Ariz. R. Evid. 801(a), (c). Here, Noguero attempted to admit the residential lease agreements to prove the amount she paid in rent at the apartment complex and house she rented after moving out of her home. She specifically stated that she wanted to introduce the leases to show her incurred additional living expenses that she believed American Family should have, but did not, cover. Noguero did not, however, lay any more foundation for the leases' admissibility and did not argue that they otherwise fell under one of the hearsay exceptions. Thus, the trial court did not abuse its discretion by sustaining American Family's objection and refusing to admit them.

### 3. Motion for Judgment as a Matter of Law

¶27        Noguero argues finally that the trial court erred by not treating her motion for judgment as a matter of law as a motion for a new trial and by denying it. Unlike the evidentiary matters above, we review the trial court's denial of a motion for judgment as a matter of law de novo. *Goodman v. Physical Resource Eng'g., Inc.*, 229 Ariz. 25, 27 ¶ 6, 270 P.3d 852, 854 (App. 2011). We will uphold a trial court's ruling unless the facts produced to support the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent. *Id.* at 28 ¶ 6, 270 P.3d at 855. But because Noguero failed to make a pre-judgment motion for judgment as a matter of law and failed to otherwise preserve her arguments on the sufficiency of the evidence in an alternative motion for a new trial, the trial court did not err in denying Noguero's motion.

¶28        After a party in a jury trial has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," Arizona Rule of Civil Procedure 50(a) permits the opposing party to move for, and the trial court to grant, a motion for judgment as a matter of law. The moving party may make such a motion at any time before submission of the case to the jury and must specify the judgment sought and the law and facts on which the moving

party is entitled to judgment. Ariz. R. Civ. P. 50(a)(2). If the trial court denies the moving party's motion for judgment and submits the action to the jury, Rule 50(b) allows the moving party to renew its motion within 15 days of the judgment. The moving party may join a motion for new trial pursuant to Arizona Rule of Civil Procedure 59 with the renewal of the motion for judgment, or a new trial may be requested in the alternative. Ariz. R. Civ. P. 50(b).

**¶29**        Here, Noguero did not move for a judgment as a matter of law before the case was submitted to the jury. Because she did not do so, she has waived any argument that she was entitled to judgment as a matter of law on the issues of breach of contract and covenant of good faith and fair dealing. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 27, 945 P.2d 317, 338 (App. 1996) ("Our case law treats a motion for directed verdict at the close of all the evidence as a pre-requisite to a later motion for [judgment as a matter of law]."); *see also Dawson v. Withycombe*, 216 Ariz. 84, 99 ¶ 38 n.10, 163 P.3d 1034, 1049 n.10 (App. 2007) (stating that the appellants could not raise a sufficiency of the evidence argument for the first time in a post-judgment motion for judgment as a matter of law because they did not file a pre-judgment motion for judgment). Failing to move for a judgment as a matter of law before submitting the case to the jury, Noguero was limited to making her arguments on the sufficiency of the evidence in a motion for new trial, which she did not do. *See Dawson*, 216 Ariz. at 99 ¶ 38 n.10, 163 P.3d at 1049 n.10 ("Thus . . . the appellants were limited to making a motion for new trial under Rule 59(a).").

**¶30**        Noguero counters that although she titled her motion as one for "Judgment Notwithstanding the Verdict," the motion substantively showed that it was one for a new trial under Rule 59(a) and the trial court should have therefore treated it as such. Although Noguero did cite to Rule 59(a) in her motion and not Rule 50, the remainder of her motion substantively shows that she intended it as a motion for judgment as a matter of law. In the opening of her motion, Noguero states that she seeks a judgment notwithstanding the verdict and cites to standards of law for a motion for judgment notwithstanding the verdict. Additionally, Noguero's prayer for relief specifically requested that the trial court "set aside the jury verdict" and that the court "grant this motion and direct a verdict for the Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing." Noguero also specifically asked that the trial court "grant a new trial for damages *only*." Additionally, although American Family argued in its response to Noguero's motion that the motion was procedurally deficient, Noguero did not reply or otherwise raise the

argument that she intended her motion to be one for a new trial. Thus, the trial court did not err.

### 4. Attorneys' Fees

**¶31** Noguero requests attorneys' fees and costs pursuant to A.R.S. §§ 12–341 and 341.01. American Family requests attorneys' fees pursuant to A.R.S. § 12–341.01. We deny both requests for fees, but award American Family its costs pursuant to A.R.S. § 12–342.

### CONCLUSION

**¶32** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA